IN THE MATTER OF: JAMES DAVID FAIRCLOTH, JR., DAKOTA LEE FAIRCLOTH, AMANDA SUE LYNN FAIRCLOTH, AND MARGARET IRENE FAIRCLOTH, JUVENILES

No. COA01-1524

(Filed 5 November 2002)

1. Judges— termination of parental rights—same judge at prior abuse hearing—recusal not required

The trial judge did not err by not recusing himself from a termination of parental rights hearing where he had presided over a prior abuse and neglect hearing and had adjudicated the children abused and neglected (although that ruling was reversed and remanded on appeal).

**2. Termination of Parental Rights— pending remanded abuse and neglect hearing—not a condition precedent for termination hearing**

There was no error where a trial judge held a termination of parental rights hearing without first rehearing a remanded abuse and neglect proceeding. Such a hearing is not a condition precedent for a termination hearing.

**3. Termination of Parental Rights— appointed counsel— effectiveness**

The trial court did not err by not removing respondent's attorney from a termination of parental rights hearing where respondent claimed that his appointed attorney was ineffective, but did not show that his attorney's performance was so deficient as to deprive him of a fair hearing.

**4. Trials— removal of disruptive respondent—no abuse of discretion**

The trial court did not abuse its discretion by removing respondent from a termination of parental rights hearing without providing a means for him to testify where respondent was profane and belligerent, refused to be affirmed prior to questioning, interrupted and argued, and was removed after a final warning from the judge.

**5. Termination of Parental Rights— failure to deny or present argument about certain grounds—only one ground needed**

No prejudicial error was found in a termination of parental rights proceeding where respondent admitted some of the allegations in the petition by failing to deny them and did not present an appellate argument about some of the grounds for termination found by the court. Because the trial court needs to find only one of the statutory grounds for termination, any error in the remaining assignments of error was not prejudicial.

Judge TYSON concurring.

Appeal by respondent from order entered 26 July 2001 by Judge John W. Dickson in Cumberland County District Court. Heard in the Court of Appeals 15 August 2002.

## IN RE FAIRCLOTH

[153 N.C. App. 565 (2002)]

*David L. Kennedy for petitioner-appellee Cumberland County Department of Social Services.*

*Susan J. Hall for respondent-appellant.*

THOMAS, Judge.

James Faircloth, Sr., respondent, appeals from an order terminating his parental rights to four children.

He contends the trial court committed reversible error (1) by denying his motion to recuse the trial judge from the termination of parental rights hearing; (2) by denying his attorney's motion to withdraw, and his oral motion to remove his attorney, based on ineffective assistance of counsel; (3) by ejecting him from the proceedings without affording him a means to participate other than through his attorney; (4) by finding that his *Alford* plea was an admission of his abuse of the children; and (5) by finding he had left the children in foster care for more than twelve months without showing reasonable progress in correcting the conditions which led to the removal of the children. For the reasons discussed herein, we affirm the trial court.

Faircloth is the father of James, born 4 June 1987; Dakota, born 22 September 1990; Amanda, born 7 August 1992; and Margaret, born 26 January 1995.

Prior to the filing of the termination petition, Faircloth was charged with numerous criminal offenses involving Amanda. On 11 October 1999, he entered an *Alford* plea to first degree rape, two counts of first degree sexual offense, felonious child abuse, crime against nature, felonious incest, and indecent liberties. He was sentenced to a term of 384 to 470 months in prison.

A petition to terminate Faircloth's parental rights and the parental rights of the children's mother, Tesha Faircloth Lewis, was filed on 3 August 2000 by the Cumberland County Department of Social Services (DSS). It alleges, *inter alia*, that: (1) Faircloth physically abused the children by hitting them with his hands and other objects; (2) he rubbed underwear soaked in urine and feces in Amanda's face in the presence of the other children; (3) he sexually abused Amanda and Margaret; (4) he emotionally abused the children; (5) the children were exposed to sexual activity, domestic violence, and their parents' excessive drinking and drug use; (6)

Faircloth willfully left the children in foster care for more than twelve months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made to correct the conditions which led to the children's removal; and (7) for six months immediately preceding the filing of the petition, Faircloth did not pay a reasonable portion of the cost of care for the children although physically and financially able to do so.

The hearing at issue did not include adjudication of the mother's parental rights. The record is silent as to when or whether the section of the petition against the mother was heard.

The hearing on the section involving Faircloth's parental rights occurred 26 July 2001. The trial court found by clear and convincing evidence that (a) on 11 October 1999, Faircloth entered an *Alford* plea to the sexual offenses committed against Amanda and was sentenced to 384 to 470 months in prison; (b) Faircloth's incarceration beginning 8 January 1998 was due to willful actions on his part; (c) the children have been in DSS care continuously since 3 July 1997; and (d) Faircloth has received no treatment for his abuse of Amanda and there is a substantial likelihood that the abuse will continue.

The trial court then reached the following conclusions of law: (1) Faircloth abused Amanda within the meaning of N.C. Gen. Stat. § 7B-101(1); (2) he neglected the children within the meaning of N.C. Gen. Stat. § 7B-101(15) by not providing proper care, supervision or discipline; (3) he willfully left the children in foster care for more than twelve months without showing to the satisfaction of the Court that reasonable progress under the circumstances had been made to correct the conditions which led to the removal of the children; (4) the children have been in DSS custody since 3 July 1997, and for six months immediately preceding the filing of the petition, Faircloth failed to pay a reasonable portion of the cost of care for the children although physically and financially able to do so; (5) Faircloth is incapable of providing proper care and supervision for the children, such that the children are dependent children within the meaning of N.C. Gen. Stat. § 7B-101(9), and there is a reasonable probability that such incapability will continue for the foreseeable future; (6) he willfully abandoned the children for at least six consecutive months immediately preceding the filing of the petition; (7) he committed a felony assault resulting in serious bodily injury against Amanda in violation of N.C. Gen. Stat. § 7B-1111(8); (8) Faircloth's rights to Amanda have been involuntarily terminated and he lacks the ability or willingness

**IN RE FAIRCLOTH**

[153 N.C. App. 565 (2002)]

to establish a safe home in violation of N.C. Gen. Stat. § 7B-1111(9). In its eighth and final conclusion of law, the trial court used the termination of Faircloth's parental rights to Amanda in the instant case to support a separate ground for terminating his parental rights to the other three children.

The trial court's conclusions of law are in part findings of fact based on clear and convincing evidence that statutory grounds for termination exist. That these findings are mislabeled conclusions of law is not fatal to the trial court's adjudicatory order. *Cf. Highway Church of Christ v. Barber*, 72 N.C. App. 481, 483-84, 325 S.E.2d 305, 307 (1985) (as long as findings of fact and conclusions of law are clearly stated and easily distinguishable, the mere fact they are not separately and properly labeled, does not violate N.C. R. Civ. P. 52(a)(1)).

At disposition, the trial court found no evidence that it would be in the best interests of the children not to terminate Faircloth's parental rights and thus ordered Faircloth's parental rights to the four children terminated. Faircloth appeals.

[1] By his first assignment of error, Faircloth contends Judge John W. Dickson erred in refusing to recuse himself from the termination hearing. He argues that Judge Dickson had a personal bias or prejudice and/or personal knowledge of disputed evidentiary facts and therefore should not have been the hearing judge. We disagree.

Judge Dickson presided over an earlier hearing on allegations that the four children were abused and neglected. Judge Dickson adjudicated the four children abused and neglected; however, on appeal, this Court reversed the order. *In re Faircloth*, 137 N.C. App. 311, 527 S.E.2d 679 (2000). The ground for reversal was that the trial court applied an erroneous legal standard in denying Faircloth's request to call three of the children as witnesses. *Id.* at 318, 527 S.E.2d at 684. The matter was remanded for a new hearing but it did not occur.

Faircloth contends Judge Dickson was biased and could not be impartial because he heard evidence against Faircloth in the previous abuse and neglect proceeding without hearing from the three children Faircloth sought to call as witnesses. Faircloth further contends Judge Dickson's bias is evidenced by his failure to hold a new hearing in the abuse and neglect proceeding before hearing the petition to terminate.

The Code of Judicial Conduct provides in pertinent part:

C. *Disqualification*

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings;

. . . .

Code of Judicial Conduct Canon 3(C)(1)(a), 2002 Ann. R. N.C. 306-07.

When a party requests such a recusal by the trial court, the party must " 'demonstrate objectively that grounds for disqualification actually exist.' " *In re LaRue,* 113 N.C. App. 807, 809, 440 S.E.2d 301, 303 (1994) (quoting *State v. Kennedy,* 110 N.C. App. 302, 305, 429 S.E.2d 449, 451 (1993) (citations omitted)). The requesting party has the burden of showing through substantial evidence that the judge has such a personal bias, prejudice or interest that he would be unable to rule impartially. *See State v. Fie,* 320 N.C. 626, 627, 359 S.E.2d 774, 775 (1987); *State v. Honaker,* 111 N.C. App. 216, 219, 431 S.E.2d 869, 871 (1993). If there is sufficient force to the allegations contained in a recusal motion to proceed to find facts, or if a reasonable man knowing all of the circumstances would have doubts about the judge's ability to rule on the motion to recuse in an impartial manner, the trial judge should either recuse himself or refer the recusal motion to another judge. *See State v. Poole,* 305 N.C. 308, 320, 289 S.E.2d 335, 343 (1982); *Bank v. Gillespie,* 291 N.C. 303, 311, 230 S.E.2d 375, 380 (1976).

In the instant case, Faircloth's claim of bias and prejudice is based on Judge Dickson having presided over the earlier abuse and neglect hearing. However, this Court has held that knowledge of evidentiary facts gained by a trial judge from an earlier proceeding does not require disqualification. *In re LaRue,* 113 N.C. App. at 810, 440 S.E.2d at 303 (holding that a trial judge who had conducted an earlier review hearing, concluded that three children should remain with DSS, and recommended that DSS pursue termination of parental rights, was not subject to disqualification based on personal bias or prejudice in the subsequent termination proceeding). Furthermore, we reject any contention that Judge Dickson should be disqualified

because he earlier adjudicated the four children abused and neglected. *See id.*

**[2]** Finally, Faircloth has failed to show error arising from the trial court's failure to hold a rehearing in the abuse and neglect proceeding prior to the instant case. An adjudicatory hearing on abuse and neglect allegations is not a condition precedent to a termination hearing. In fact, N.C. Gen. Stat. § 7B-1111 provides grounds for terminating parental rights which are not conditioned on a determination that a child is abused or neglected. N.C. Gen. Stat. §§ 7B-1111(3), (5), (6) (2001). We further note that N.C. Gen. Stat. § 7B-1102 allows parties to file motions to terminate parental rights in pending child abuse or neglect proceedings and gives the trial court authority to consolidate the actions pursuant to N.C. R. Civ. P. 42. N.C. Gen. Stat. § 7B-1102(a), (c) (2001). A review of N.C.G.S. § 1102, as well as the rest of Chapter 7B, Article 11, reveals no requirement as suggested by Faircloth. Here, such a hearing on abuse and neglect may well have been merely redundant with parts of the termination hearing. Further, considering the length of delay resulting from the earlier appeal, the status of the children and the need to determine permanency may well have changed.

As he fails to advance any further argument to substantiate his claim of personal bias or prejudice on the part of Judge Dickson, Faircloth's first assignment of error is rejected.

**[3]** In his next assignment of error, Faircloth contends the trial court erred in not removing his attorney from the case. We disagree.

N.C. Gen. Stat. §§ 7B-1101 and 7B-1109(b) guarantee a parent's right to counsel, including appointed counsel in cases of indigency, in all proceedings related to the termination of parental rights. *See In re Oghenekevebe*, 123 N.C. App. 434, 436, 473 S.E.2d 393, 396 (1996) (recognizing these rights under former N.C. Gen. Stat. § 7A-289(23)). Implicit in this right to counsel is the right to effective assistance of counsel. *Id.* at 436, 473 S.E.2d at 396; *In re Bishop*, 92 N.C. App. 662, 665, 375 S.E.2d 676, 678 (1989). To prevail on a claim of ineffective assistance of counsel, Faircloth "must show that counsel's performance was deficient and the deficiency was so serious as to deprive [him] of a fair hearing." *In re Bishop*, 92 N.C. App. at 665, 375 S.E.2d at 679.

Counsel was appointed for Faircloth and has represented him in the instant case, the earlier abuse and neglect proceeding, and the

prior appeal. Faircloth claims evidence of counsel's deficient performance can be found in the failure to schedule a new hearing in the abuse and neglect proceeding, the failure to issue subpoenas and file pre-trial motions prior to the termination hearing as requested by Faircloth, and the failure to object to testimony offered by the prosecutor of Faircloth's criminal case. Faircloth, however, does not show prejudice arising from there being no rehearing in the abuse and neglect proceeding prior to the termination hearing. As noted earlier, such a hearing was not required. He also fails to indicate the nature of the pre-trial motions counsel should have filed or the identity of witnesses counsel should have subpoenaed. Thus, we cannot hold that counsel's failure to do so resulted in prejudice to Faircloth or denied him a fair hearing.

The record actually shows counsel objected at several points during the testimony of the State's prosecutor, including when hearsay evidence was being offered by the prosecutor regarding reports by two of the children that had not been offered at Faircloth's criminal trial. Counsel also cross-examined the State's prosecutor concerning the details of Faircloth's *Alford* plea. In sum, Faircloth fails to demonstrate that counsel's conduct at trial was so deficient as to deprive him of a fair hearing. The trial court did not err in failing to remove counsel from the case.

[4] By his third assignment of error, Faircloth contends the trial court abused its discretion in removing him from the hearing while not providing a means for him to testify when called by counsel. We disagree.

The record shows Faircloth repeatedly disrupted the proceedings. Following the denial of his attorney's motion to withdraw and Faircloth's oral motion to remove counsel, Faircloth told the judge, "You can't force me to have that man for my damn attorney." He then argued with the trial court concerning the judge's decision not to recuse himself. During this exchange, Faircloth repeatedly cursed and acted in a belligerent fashion. At one point, he was told by the bailiff to turn around and keep his feet under the table, to which Faircloth responded, "Take me out of this motherfucker." He refused to be affirmed prior to questioning by counsel for DSS. He was then asked whether he had pled guilty to the sexual offenses committed against Amanda and he denied it. His counsel then declined an opportunity to question him. He continuously interrupted the testimony of the State's prosecutor with the trial court telling him to direct any questions he had for witnesses to his attorney. Nevertheless,

Faircloth continued interrupting and using profane language. The trial court finally warned Faircloth he would be removed from the courtroom if he used "one more bit of profanity." Faircloth responded by yet again cursing the judge. The trial court then stated:

> All right. The court having warned Mr. Faircloth that if there was any more profanity from him he would be removed from this courtroom; that within less than 60 seconds, more profanity issued from him. He is ordered removed from this courtroom. He may be returned to the Department of Corrections.

Following the presentation of DSS' case, counsel for Faircloth attempted to call Faircloth as a witness. Faircloth was not present and no steps were taken to secure his testimony.

A termination of parental rights hearing is a civil rather than criminal action, with the right to be present, to testify, and to confront witnesses subject to "due limitations." *In re Murphy*, 105 N.C. App. 651, 658, 414 S.E.2d 396, 400, *aff'd*, 332 N.C. 663, 422 S.E.2d 577 (1992); *In re Barkley*, 61 N.C. App. 267, 270, 300 S.E.2d 713, 715 (1983). In *Murphy*, this Court held that an incarcerated parent's presence at a termination of parental rights hearing was not required as a matter of law, but rather was a matter for determination by the trial court subject to appellate review. *Murphy*, 105 N.C. App. at 654, 414 S.E.2d at 398. The Court further held that the three-factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18 (1976), was the appropriate measure for determining if the process afforded in a parental termination proceeding meets the "rigors of the due process clause." *Id.* at 653, 414 S.E.2d at 397. The *Mathews/Eldridge* factors are: "[1] the private interests affected by the proceeding; [2] the risk of error created by the State's chosen procedure; and [3] the countervailing governmental interest supporting use of the challenged procedure." *Santosky v. Kramer*, 455 U.S. 745, 754, 71 L. Ed. 2d 599, 607 (1982).

Analysis of the *Mathews/Eldridge* factors shows Faircloth's due process rights were not violated. The first factor, his private interest, weighs against the trial court's decision to remove him from the courtroom without providing a means through which he could testify. The importance of a natural parent's right to the care, custody and management of his or her children cannot be denied and "[a] parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one[.]" *Id.* at 758-59,

71 L. Ed. 2d at 610 (citations omitted). One faced with the possible dissolution of parental rights has a strong interest in being present at the hearing and having the opportunity to testify.

However, the third factor, the countervailing governmental interest, weighs in support of the trial court's decision. The State has an interest in ensuring a fair hearing and a correct decision and protecting the dignity of the courtroom. Faircloth's conduct here severely disrupted the proceeding. He refused to respond to the clerk's attempts to take his oath of affirmation when called to testify by DSS. He was repeatedly warned by the trial court to direct questions to his attorney after he verbally harassed and attempted to question a witness. Finally, he was warned by the court he would be removed for continued use of profanity. Faircloth persisted and only then was taken from the courtroom. Clearly, there was an adequate basis for the trial court to determine that Faircloth's disruptive behavior prevented a proper adjudicatory hearing and demonstrated contempt for court.

The second *Mathews/Eldridge* factor, the risk of error created by the State's procedure, also weighs in favor of the State. On this record, the risk of error created by Faircloth's removal from the courtroom without being provided means through which to testify was slight. Although Faircloth was called to testify, and his counsel objected to Faircloth's inability to testify, Faircloth has made no argument that his testimony would have provided a defense to the termination, nor does he indicate how he was prejudiced by not being present and not being allowed to testify. Further, his actions during the hearing undermine any claim that he was prejudiced by removal. His disregard for the procedure of the court and failure to be affirmed when called to testify by DSS indicate he did not value his right to testify. His disruptive behavior following repeated warnings clearly demonstrates he did not value his right to be present for the remainder of the hearing.

In sum, the strength of the governmental interest in assuring a fair and just adjudication and protecting the dignity of the courtroom, and the low risk of error created by Faircloth's inability to testify, lead to the conclusion his due process rights were not violated. The trial court did not abuse its discretion in removing Faircloth from the courtroom without providing a means for him to personally participate in the remainder of the hearing.

By his remaining two assignments of error, Faircloth attacks some of the grounds on which the trial court based its order terminating his parental rights.

"There is a two-step process in a termination of parental rights proceeding." *In re Blackburn*, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). The two stages are distinct. *In re Lambert-Stowers*, 146 N.C. App. 438, 440, 552 S.E.2d 278, 280 (2001). At the adjudicatory stage, the petitioner has the burden of establishing by clear and convincing evidence that at least one of the statutory grounds listed in N.C. Gen. Stat. § 7B-1111 exists. *In re Anderson*, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002); *In re Blackburn*, 142 N.C. App. at 610, 543 S.E.2d at 908. We note that Chapter 7B, Article 11 interchangeably uses the "clear, cogent and convincing" and the "clear and convincing" standards. *Compare* N.C. Gen. Stat. § 7B-1109 ("The burden in such proceedings shall be upon the petitioner or movant and all findings of fact shall be based on clear, cogent, and convincing evidence.") *with* N.C. Gen. Stat. § 7B-1111 ("The burden in such proceedings shall be upon the petitioner or movant to prove the facts justifying such termination by clear and convincing evidence."). These two standards are synonymous. *In re Montgomery*, 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984).

If a ground for termination is so established, the trial court must proceed to the second stage and hold a dispositional hearing. *In re Lambert-Stowers*, 146 N.C. App. at 440, 552 S.E.2d at 280. There, the trial court must consider whether termination is in the best interests of the child. *In re Anderson*, 151 N.C. App. at 98, 564 S.E.2d at 602. Unless the trial court determines that the best interests of the child require otherwise, the termination order shall be issued. N.C. Gen. Stat. § 7B-1110; *In re Blackburn*, 142 N.C. App. at 610, 543 S.E.2d at 908.

Here, the trial court determined the following statutory grounds for termination existed: (1) Faircloth abused Amanda within the meaning of N.C.G.S. § 7B-101(1); (2) he neglected the children within the meaning of N.C.G.S. § 7B-101(15) by not providing proper care, supervision or discipline; (3) he willfully left the children in foster care for more than twelve months without showing to the satisfaction of the Court that reasonable progress under the circumstances had been made to correct the conditions which led to the children's removal; (4) the children have been placed in DSS custody and for six months immediately preceding the filing of the petition Faircloth failed to pay a reasonable portion of the cost of care for the children

although physically and financially able to do so; (5) Faircloth is incapable of providing proper care and supervision for the children, such that they are dependent children within the meaning of N.C.G.S. § 7B-101(9), and there is a reasonable probability that such incapability will continue for the foreseeable future; (6) he willfully abandoned the children for at least six consecutive months immediately preceding the filing of the petition; (7) he committed a felony assault resulting in serious bodily injury against Amanda in violation of N.C.G.S. § 7B-1111(8); and (8) his parental rights to Amanda have been involuntarily terminated and he lacks the ability or willingness to establish a safe home in violation of N.C.G.S. § 7B-1111(9).

In his brief, Faircloth only presents argument against the following statutory grounds for termination: (1) that he abused Amanda; (2) that he willfully left the children in foster care for twelve months without showing reasonable progress in correcting the conditions which led to removal; and (3) that he is incapable of providing proper care and supervision such that the juveniles are dependent children under N.C.G.S. § 7A-101(9), and there is a reasonable probability that such incapability will continue for the foreseeable future.

He presents no argument against the following grounds for termination: (1) that he neglected the children; (2) that for a period of six months immediately preceding the filing of the petition he failed a pay a reasonable portion of the children's cost of care although able to do so; and (3) that he willfully abandoned the children for at least six consecutive months immediately preceding the filing of the petition.

[5] The trial court need only find one of the statutory grounds for termination. N.C.G.S. § 7B-1111(a). Furthermore, this Court's appellate review is limited to those assignments of error set out in the record on appeal and properly presented and discussed in the party's brief. N.C. R. App. P. 10(a) (2002); N.C. R. App. P. 28(a) (2002). Questions not so raised and presented are deemed abandoned. Since Faircloth has failed to present argument against several of the statutory grounds for termination found by the trial court, we do not review those grounds. In addition, by failing to deny in his answer certain allegations contained in the petition, Faircloth, in fact, admitted he willfully left the children in foster care for more than twelve months without showing reasonable progress and failed to pay a reasonable portion of the children's cost of care for a period of six months immediately preceding the filing of the petition although able to do so. *See* N.C. Gen. Stat. §§ 7B-1107, 7B-1108(a) (2001). Accordingly, even as-

suming Faircloth's two remaining assignments of error have merit, any such errors are not prejudicial in this case since other substantial grounds for termination were established.

We hold that the trial court did not err in failing to recuse itself, did not err in failing to remove Faircloth's counsel from the case, did not abuse its discretion in removing Faircloth from the proceedings and did find sufficient grounds for termination. We affirm the trial court's order terminating Faircloth's parental rights to the four children.

Affirmed.

Judge MARTIN concurs.

Judge TYSON concurs in the result only.

TYSON, Judge concurring.

I concur in the result of the majority's opinion.

## I. Facts

On 15 December 1998, Judge Dickson held a hearing on the petition to adjudicate the children abused and neglected. At the hearing, respondent, represented by Attorney William Brown, called the children to testify. Judge Dickson found that none of the children could testify because of the detrimental effect on the children to face their father. Respondent appealed. Attorney Brown also represented defendant on his first appeal to this Court. On 4 April 2000, this Court held:

> Because the trial court applied an erroneous legal standard in denying respondent father's request to call the children as witnesses, we must reverse the adjudication order in this case and remand the matter to the District Court for a new hearing at which the competence of the children to testify, should they be called as witnesses, shall be determined in accordance with G.S. § 8C-1, Rule 601. In the event the children's mental condition does not render them incompetent to testify, and they are called as witnesses, the trial court shall take appropriate measures to mitigate, insofar as possible, any harmful effects to them of being required to testify.

*In re Faircloth*, 137 N.C. App. 311, 318, 527 S.E.2d 679, 684 (2000).

More than ninety days after this Court's mandate issued, DSS petitioned on 3 August 2000 for termination of respondent's parental rights without calendaring the hearing on remand on the petition to adjudicate the children abused and neglected. On 6 September 2000, respondent requested that William Brown be appointed his counsel for the termination of parental rights cases. This request was granted.

On 19 March 2001, Mr. Brown filed a motion for Judge Dickson to recuse himself claiming that: (1) Judge Dickson was the presiding judge over the abuse and neglect matter; (2) Judge Dickson's "judgment in [that matter] was overturned by the North Carolina Court of Appeals"; (3) the matter was set for termination of parental rights on 23 March 2001; and (4) Judge "Dickson may have pre-conceived judgment in this matter." On 7 May 2001, Mr. Brown filed a motion to withdraw as counsel at the request of his client.

Neither of these motions were calendared for prior hearing nor were the children subpoenaed to testify at the termination proceeding. Respondent has been incarcerated since 8 January 1998. He was brought from North Carolina Central Prison for the hearing on termination of his parental rights.

At the hearing, the trial court heard respondent's pending motions. Judge Dickson stated "Mr. Brown, you have motions?" Mr. Brown responded:

> Your honor, my first motion is for me to withdraw. Within the confines of this courtroom, in front of this judge, Mr. Faircloth has on many occasions expressed his displeasure with my representations, saying there's a conflict and that inadequate representation. I also received a letter from him on 5/19, and without breaching the lawyer-client privilege, it is simply, among other things, saying that he's displeased with my representations, that he feels that I am inadequately representing him, your honor.

Mr. Faircloth agreed there was a conflict of interest and stated: "I asked this man to file motions. I asked him to file subpoenas. I asked him to do things that he should have been doing. He ain't even done—he ain't even tried to fight the case. Even on appeal, that I was supposed to have went before another—on another, a new trial. I ain't been to no new trial yet. That been over two, three years. That's my constitutional right, to have another trial." Judge Dickson denied Mr. Brown's motion to withdraw and ruled that the "motion

to have Mr. Brown removed as counsel orally made by the Respondent Father is denied." Mr. Faircloth became angry and argumentative by this ruling.

Mr. Brown then presented the motion to recuse based upon respondent's belief "that [Judge Dickson] may have a preconceived idea as to how to rule on this case." Mr. Faircloth stated to Judge Dickson "You biased and you're prejudiced, and you need to get the f—k off my d—n case." In response, Judge Dickson stated "This Court has no preconceived opinions in this matter. This is a different matter from the matter previously heard by this Court. The motion to recuse is denied." Respondent became more argumentative and profane and was removed from the proceeding and transported back to prison.

## II. Motion to Recuse

The Code of Judicial Conduct provides in pertinent part:

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) He has a personal bias or prejudice concerning a party. . . .

Code of Judicial Conduct, Cannon 3(C) (2002). "The burden is on the party moving for recusal to demonstrate objectively that grounds for disqualification actually exist." *State v. Kennedy*, 110 N.C. App. 302, 305, 429 S.E.2d 449, 451 (1993) (citations omitted) (internal quotation marks omitted). "The moving party may carry this burden with a showing of substantial evidence that there exists such a personal bias, prejudice or interest on the part of the judge that he would be unable to rule impartially or a showing that the circumstances are such that a reasonable person would question whether the judge could rule impartially." *Id.* (citations omitted) (internal quotations omitted). "[W]hen the trial judge found sufficient force in the allegations contained in defendant's motion to proceed to find facts he should have either disqualified himself or referred the matter to another judge." *Bank v. Gillespie*, 291 N.C. 303, 311, 230 S.E.2d 375, 380 (1976).

"Bias or prejudice does not refer to any views a judge may entertain toward the subject matter involved in the case." *Kennedy*, 110 N.C. App. at 305, 429 S.E.2d at 451. "[T]he fact that a trial judge has repeatedly ruled against a party is not grounds for disqualification of that judge absent substantial evidence to support allegations of inter-

est or prejudice." *Love v. Pressley*, 34 N.C. App. 503, 506, 239 S.E.2d 574, 577 (1977), *cert. denied*, 394 N.C. 441, 241 S.E.2d 843 (1978).

Here, the only allegations in support of respondent's motion to recuse is that Judge Dickson presided over the prior abuse and neglect proceeding which was overturned on appeal and that "Judge John W. Dickson may have a pre-conceived judgment in this matter." Previously holding a hearing on abuse and neglect is not grounds for disqualification in the present action. *Id.* Without further allegations of bias or prejudice, the trial court did not err in denying respondent's motion to recuse.

### III. Motion to Withdraw

Parents in a termination of parental rights action are guaranteed the right to appointed counsel if they are found indigent. N.C. Gen. Stat. § 7B-1109. "Although the right of an indigent defendant to have competent counsel is unquestionable, *cf. State v. Sweezy*, 291 N.C. 366, 371, 230 S.E.2d 524, 528 (1976), an accused does not have the right to have the counsel *of his choice* appointed for him, nor the right to insist that his attorney be dismissed and new counsel appointed merely because the defendant becomes dissatisfied with the attorney's services. *Id.*" *State v. Tucker*, 111 N.C. App. 907, 908, 433 S.E.2d 476, 477, *disc. rev. denied*, 355 N.C. 564, 439 S.E.2d 160 (1993). "A trial judge is only constitutionally required to appoint substitute counsel when the initial appointment has not afforded defendant his constitutional right to counsel." *Id.*

Here, Mr. Brown moved to withdraw as counsel for respondent based on the request of respondent. The trial court was not required to appoint substitute counsel in place of Mr. Brown. Judge Dickson specifically told respondent "You can either have Mr. Brown or you can proceed without an attorney. That is your choice, Sir. I am not going to appoint another attorney to represent you." Respondent did not request to proceed *pro se*; he stated: "I wish to have me another attorney." The trial court did not err in denying the motion for Mr. Brown to withdraw as counsel for respondent.

### IV. Termination Hearing

The trial court found eight separate statutory grounds for termination. Respondent made a blanket assignment of error as to all of the findings and conclusions but failed to argue against four of the statutory grounds in its brief: (1) respondent leaving the children in

STATE v. STRICKLAND

[153 N.C. App. 581 (2002)]

foster care for a continuous period of 6 months immediately preceding the petition for termination being filed without paying a reasonable portion of cost of care although physically and financially able to do so, N.C. Gen. Stat. § 7B-1111(a)(3); (2) respondent willfully abandoning the children for at least six consecutive months preceding the filing of the petition, N.C. Gen. Stat. § 7B-1111(a)(7); (3) respondent being incapable of providing for the proper care and supervision of the child such that the children are dependent within the meaning of N.C. Gen. Stat. § 7B-101(9) and there is a reasonable probability that such incapability will continue for the foreseeable future, N.C. Gen. Stat. § 7B-1111(a)(6); and (4) the parental rights of respondent with respect to Amanda had been involuntarily terminated and respondent lacked the ability or willingness to establish a safe home, N.C. Gen. Stat. § 7B-1111(9).

Only one statutory ground need exist for a trial court to terminate parental rights. N.C. Gen. Stat. § 7B-1111(a). By failing to argue error in the findings or conclusions that these statutory grounds exist, respondent has abandoned these issues on appeal. N.C. R. App. P. 10(a), 28(a).