616 S.E.2d 300 (2005)
In the Matter of D.R., Minor child.
No. COA04-953.
Court of Appeals of North Carolina.
August 2, 2005.
Charlotte W. Nallan, for petitioner-appellee Buncombe County Department of Social Services.
David Childers, Mount Holley, for respondent mother-appellant.
Richard E. Jester, Louisburg, for respondent father-appellant.
*302 TYSON, Judge.
S.J.R. ("respondent-father") and P.R. ("respondent-mother") (collectively, "respondents") appeal a judgment terminating their parental rights over their child, D.R. We affirm.

I. Background
D.R. was born on 16 October 1996 to respondents and at the time of the hearing, was seven-and-one-half years old. Buncombe County Department of Social Services ("DSS") became involved with D.R. in December 2000 when it received reports of overly severe discipline by respondent-father. DSS learned of ongoing domestic violence between respondents, substance abuse by respondents, and unstable living arrangements. The record shows respondent-mother obtained a domestic restraining order against respondent-father in Fall 2001. DSS attempted to help respondents care for D.R. at their residence. Physical and recurring substance abuses in the home led to the removal of D.R. and his placement with his paternal grandmother in January 2002.
D.R. exhibited serious mental health problems and aggressive behavior which prevented the paternal grandmother from caring for him. DSS took custody of D.R. on 25 January 2002 and placed him with foster parents where he has since remained. DSS petitioned the trial court to find D.R. neglected. On 18 April 2002, the trial court ordered: (1) D.R. neglected; (2) D.R. to remain in DSS's custody; (3) respondents and D.R. undergo psychological evaluations and treatment; (4) respondents complete anger management, substance abuse, and parenting classes; (5) respondents maintain employment and provide financial support to D.R.; and (6) respondents receive weekly visitation with D.R.
While D.R. remained in foster care, DSS received reports of inappropriate sexual discussions and behavior by D.R. He told his foster parents that he had watched respondents engage in sexual intercourse and participated with them in sexual activities. D.R. also reported that a step-brother had engaged in oral sex with him at respondent-mother's home. The foster parents learned D.R. had instigated sexual conduct with another boy at church. In August 2002, DSS petitioned the trial court to find D.R. an abused juvenile, alleging the facts as provided by the foster parents. In response, respondents moved the trial court for expenses to cover expert psychological evaluations, which was denied. The petition was not immediately heard due to discovery motions, requests for continuances, and the trial court's calendar. DSS later voluntarily dismissed the abuse petition, without prejudice, on 28 August 2003.
D.R. underwent extensive psychological evaluations and treatment during placement with his foster parents. He was treated for depression, anxiety, conflict, aggressiveness, abusiveness, Post Traumatic Stress Disorder, and inappropriate sexual knowledge and conduct.
In January 2003, respondents were arrested and charged with multiple counts of first-degree sexual offense and taking indecent liberties against a child. Their criminal trial is pending. A permanency planning and review hearing was held in March 2003. The trial court ordered D.R. to remain in DSS's *303 custody and for reunification efforts with respondents to continue. Based on respondents' failure to address the issues causing D.R.'s removal and D.R.'s continued emotional problems, the trial court changed the permanency plan for D.R. from reunification to adoption in August 2003. This permanency plan was reviewed and renewed in September and November 2003.
On 4 September 2003, DSS petitioned the trial court to terminate respondents' parental rights alleging D.R. was: (1) emotionally and sexually abused; (2) neglected; and (3) left in foster care for more than twelve months without respondents making reasonable efforts towards correcting the conditions leading to D.R.'s removal.
A hearing was held on 10, 12, 13, and 14 November 2003. In response to evidence raised during previous hearings, respondents asserted none of the sexual activities D.R. spoke of were true and accused the foster parents of "coaching" D.R. to make the allegations. Respondent-father argued the problems arose after D.R. was removed from respondent-mother's home. Respondents offered evidence that both were sober and had completed physical and substance abuse programs.
The trial court found respondents' evidence "lacked credibility" and determined the allegations in the petition to be true. The trial court determined the following grounds existed to terminate respondents' parental rights: (1) neglect under N.C. Gen.Stat. § 7B-1111(a)(1); (2) abuse under N.C. Gen.Stat. § 7B-1111(a)(1); and (3) willful abandonment in foster care placement for more than twelve months. It further concluded that it was in D.R.'s best interest to terminate respondents' parental rights. The termination order was entered on 22 January 2004. Both respondents appeal.

II. Issues
Respondents argue the trial court erred by: (1) allowing testimony in violation of their Sixth Amendment rights; (2) finding facts and making conclusions of law without clear, cogent, and convincing evidence; (3) denying respondents' motion for funds for an expert witness and a telephone deposition; (4) entering the termination of parental rights order after the statutory thirty day time limit.

III. Sixth Amendment
Respondents argue the trial court erred by admitting statements made by D.R. through the testimony of social workers, a foster parent, and psychologists. Specifically, they contend the testimony was admitted in violation of their Sixth Amendment right to confront witnesses against them. We disagree.
The Sixth Amendment to the United States Constitution states in part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with witnesses against him." U.S. Const. Amend. VI (emphasis supplied). The United States Supreme Court held in Crawford v. Washington, the Confrontation Clause from the Sixth Amendment bars admission of out-of-court testimonial statements unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177, 203 (2004). "A termination of parental rights hearing is a civil rather than criminal action, with the right to be present, to testify, and to confront witnesses subject to `due limitations.'" In re Faircloth, 153 N.C.App. 565, 573, 571 S.E.2d 65, 71 (2002) (citing In re Murphy, 105 N.C.App. 651, 658, 414 S.E.2d 396, 400, aff'd, 332 N.C. 663, 422 S.E.2d 577 (1992); In re Barkley, 61 N.C.App. 267, 270, 300 S.E.2d 713, 715 (1983)).
Here, DSS's workers, D.R.'s foster parents, and psychologists testified concerning statements D.R. made to them and D.R.'s questionable activities. Respondents assert this testimony violated their Sixth Amendment rights since they were not afforded an opportunity to confront and cross-examine D.R. However, the Sixth Amendment is not applicable to this matter as it is a civil action. See In re Faircloth, 153 N.C.App. at 573, 571 S.E.2d at 71.
Respondents only assert the constitutional argument in their briefs regarding the statements. Our review is limited to arguments presented by parties in their briefs supported *304 by citations of authority. See N.C.R.App. P. 28(b)(6) (2004); see also Melton v. Family First Mortgage Corp., 156 N.C.App. 129, 132, 576 S.E.2d 365, 368 (2003) ("[P]laintiff has only presented arguments in her brief regarding [some of] her claims. . . . Accordingly, our review will be limited to those issues.") (citation omitted), aff'd per curiam, 357 N.C. 573, 597 S.E.2d 672 (2003). This assignment of error is overruled.

IV. Clear, Cogent, and Convincing Evidence
Respondents contend that without the evidence admitted in violation of their Sixth Amendment rights, there was no clear, cogent, and convincing evidence supporting the trial court's findings of fact and conclusions of law. In light of our earlier holding that respondents' Sixth Amendment rights were not violated and the trial court properly admitted the testimony, we dismiss this assignment of error as moot.

V. Motion for Funds
Respondents assert the trial court erred by denying respondent-father's motions for funds to employ an expert witness and complete a telephone deposition. We disagree.
Article 36 of Chapter 7A of our General Statutes proscribes the practices, procedures, and entitlements for indigent persons. N.C. Gen.Stat. § 7A-450 et seq. (2003). The scope of this Article extends to a "proceeding to terminate parental rights. . . ." N.C. Gen.Stat. § 7A-451(a)(14) (2003). N.C. Gen.Stat. § 7A-454 (2003) states, "[f]ees for the services of an expert witness for an indigent person and other necessary expenses of counsel shall be paid by the State in accordance with rules adopted by the Office of Indigent Defense Services." "There is no requirement that an indigent defendant be provided with investigative assistance merely upon the defendant's request." State v. Brown, 59 N.C.App. 411, 416, 296 S.E.2d 839, 842 (1982) (citation omitted), cert. denied, 310 N.C. 155, 311 S.E.2d 294 (1984). Rather, it is in the trial court's discretion whether to grant requests for expenses to retain an expert witness or to conduct a deposition. State v. Sandlin, 61 N.C.App. 421, 426, 300 S.E.2d 893, 896-97 ("[T]he grant or denial of motions for appointment of associate counsel or expert witnesses lies within the trial court's discretion and a trial court's ruling should be overruled only upon a showing of abuse of discretion."), cert. denied, 308 N.C. 679, 304 S.E.2d 760, cert. denied, 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 685 (1983).
"As in the case of providing private investigators or other expert assistance to indigent defendants, we think the appointment of additional counsel is a matter within the discretion of the trial judge and required only upon a showing by a defendant that there is a reasonable likelihood that it will materially assist the defendant in the preparation of his defense or that without such help it is probable that defendant will not receive a fair trial."
Id. at 427, 300 S.E.2d at 897 (quoting State v. Johnson, 298 N.C. 355, 362-63, 259 S.E.2d 752, 758 (1979) (citations omitted)). "Mere hope or suspicion that favorable evidence is available is not enough to require that such help be provided." State v. Holden, 321 N.C. 125, 136, 362 S.E.2d 513, 522 (1987) (citing State v. Tatum, 291 N.C. 73, 229 S.E.2d 562 (1976)), cert. denied, 486 U.S. 1061, 108 S.Ct. 2835, 100 L.Ed.2d 935 (1988).

A. Expert Witness
Respondent-father moved the trial court for funds to retain an expert witness to examine D.R., review his medical records, and assist in preparation for the termination hearing. In support of his motion, respondent-father asserted the interviews with D.R. leading to evidence about his sexual abuse were conducted improperly and "to determine the impact of the techniques used in questioning of the minor child, an expert in the field of child sexual abuse should be appointed to review the various interviews of the minor child and to conduct a physical and/or mental examination of the minor child[.]"
Our review of the record, including respondent-father's motion, does not show "there [was] a reasonable likelihood that it will materially assist [respondents] in the preparation of [their] defense or that without such *305 help it is probable that [respondents] will not receive a fair trial." Sandlin, 61 N.C.App. at 427, 300 S.E.2d at 897. The trial court properly received briefs from both parties and heard their arguments in open court. Respondent-father failed to show the trial court abused its discretion in denying his motion.

B. Telephone Deposition
Respondent-father also moved the trial court to allow and pay for a telephone deposition of D.R.'s foster parents. He argued the investigation of respondents' alleged sexual abuse of D.R. resulted from the foster parents' improper questioning of D.R. regarding his conduct and behavior. However, respondent-father did not include in his motion his reasons for deposing the foster parents, the information he sought, or that "there [was] a reasonable likelihood that it will materially assist [respondents] in the preparation of [their] defense or that without such help it is probable that [respondents] will not receive a fair trial." Id.
Our review of the record and respondent-father's motion fails to show the trial court abused its discretion in denying his motion for expenses to conduct a telephone deposition. This portion of the assignment of error is overruled.

VI. Statutory Time Limit
Respondents argue the trial court erred by not entering its order terminating respondents' parental rights within the statutory time frame. We agree, but find respondents failed to show any prejudice.
Sections 7B-1109 and 7B-1110 of our General Statutes require a trial court "shall" reduce to writing, sign, and enter its decision on termination "no later than 30 days following the completion of the termination of parental rights hearing." N.C. Gen.Stat. § 7B-1109(e) (2003); N.C. Gen.Stat. § 7B-1110(a) (2003) (emphasis supplied). Here, the termination hearing was completed on 14 November 2003. The trial court did not reduce to writing, sign, and enter its order terminating respondents' parental rights until 22 January 2004, sixty-nine days later.
This Court has addressed the issue of prejudicial error resulting from untimely completion of statutory requirements in juvenile proceedings. In re E.N.S., 164 N.C.App. 146, 153, 595 S.E.2d 167, 172 (2004) (adjudication and dispositional orders entered over forty days after the hearing in violation of N.C. Gen.Stat. § 7B-807(b) and § 7B-905(a) not reversible error without a showing of prejudice), disc. rev. denied, 359 N.C. 189, 606 S.E.2d 903 (2004); In re J.L.K., 165 N.C.App. 311, 314-15, 598 S.E.2d 387, 390 (2004) (termination order entered eighty-nine days after the hearing not reversible error without a showing of prejudice), disc. rev. denied, 359 N.C. 68, 604 S.E.2d 314 (2004); In re B.M., 168 N.C.App. 350, 353-55, 607 S.E.2d 698, 701-02 (2005) (delay in filing petition seeking termination of parental rights in violation of N.C. Gen.Stat. § 7B-907(e) not reversible error without a showing of prejudice); In re L.E.B., ___ N.C.App. ___, ___, 610 S.E.2d 424, 426 (2005) (six month delay in entry of termination of parental rights order held prejudicial), disc. rev. denied, 359 N.C. 632, 616 S.E.2d 538 (June 30, 2005) (No. 218P05); In re A.D.L., ___ N.C.App. ___, ___, 612 S.E.2d 639, 647 (2005) (No. COA03-1333) (delay in entry of order terminating parental rights not reversible error without a showing of prejudice); In re T.L.T., ___ N.C.App. ___, ___, 612 S.E.2d 436, 438 (2005) (seven month delay in entry of order terminating parental rights held prejudicial); In re C.J.B. & M.G.B., ___ N.C.App. ___, ___, 614 S.E.2d 368, 370 (2005) (No. COA04-992) (five month delay in entry of order terminating parental rights held prejudicial).
A review of these decisions shows this Court:
has never held that entry of the written order outside the thirty-day time limitations expressed in sections 7B-1109 and 7B-1110 was reversible error absent a showing of prejudice. To the contrary, we have held that prejudice must be shown before the late entry will be deemed reversible error.
In re C.J.B., ___ N.C.App. at ___, 614 S.E.2d at 369 (citing In re J.L.K., 165 N.C.App. at 315-16, 598 S.E.2d at 390-91; In re B.M., 168 N.C.App. at 352-55, 607 S.E.2d at 700-02).
*306 Respondents do not argue how they or the other parties were prejudiced by the thirty-nine day delay. Their argument rests solely on the assertion that the delay in entering the order, in violation of N.C. Gen.Stat. § 7B-1109(e) and § 7B-1110(a), was per se prejudicial. This Court has expressly overruled this argument. See In re C.J.B., ___ N.C.App. at ___, 614 S.E.2d at 369 ("[P]rejudice must be shown before the late entry will be deemed reversible error.") (emphasis supplied). Our decision does not condone the delay in entering the adjudication and dispositional order beyond the time limits in the statutes. See In re B.M., 168 N.C.App. at 355, 607 S.E.2d at 702 (Although this Court did not find prejudice, we stated, "[w]e strongly caution against this practice, as it defeats the purpose of the time requirements specified in the statute, which is to provide parties with a speedy resolution of cases where juvenile custody is at issue."). This assignment of error is overruled.

VII. Conclusion
Respondents' Sixth Amendment confrontation rights were not violated by the admission of testimony during a civil matter. The trial court did not abuse its discretion in denying respondent-father's motions for expenses to retain an expert witness and to conduct a telephone deposition of the foster parents.
Although the trial court entered its termination order sixty-nine days after the hearing in violation of N.C. Gen.Stat. § 7B-1109(e) and N.C. Gen.Stat. § 7B-1110(a), respondents failed to argue how the delay was prejudicial. We affirm the trial court's order terminating respondents' parental rights.
Affirmed.
Judges WYNN and ELMORE concur.