An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1155
NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

In the Matter of:

                                    Guilford County
                                    No. 11 JT 163
      P.V.M.


Appeal by respondent-father from order entered 18 July 2013 by Judge Wendy Enochs in Guilford County District Court. Heard in the Court of Appeals 31 March 2014.

> *Mercedes O. Chut, for Guilford County Department of Social Services, petitioner-appellee.*
>
> *Smith, James, Rowlett & Cohen, L.L.P., by Margaret Rowlett, for guardian ad litem.*
>
> *J. Thomas Diepenbrock for respondent-appellant.*

ERVIN, Judge.

Respondent-Father David M. appeals from an order terminating his parental rights in P.V.M.[1] On appeal, Respondent-Father contends that the trial court erred by determining that his parental rights in Peter were subject to

---

[1]P.V.M. will be referred to throughout the remainder of this opinion as "Peter," which is a pseudonym used for ease of reading and to protect the juvenile's privacy.

termination and that Peter's best interests would be served by the termination of Respondent-Father's parental rights. After careful consideration of Respondent-Father's challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be affirmed.

## I. Factual Background

Peter was born out of wedlock in 2006. On 8 March 2011, the Guilford County Department of Social Services filed a petition alleging that Peter was a neglected and dependent juvenile based upon allegations that Peter's mother, Valerie M., lacked stable and adequate housing, had a substance abuse problem, could not properly care for Peter, and had failed to comply with her case plan and obtained the issuance of an order authorizing it to take Peter into non-secure custody. As the result of DNA testing conducted on 1 March 2011, Respondent-Father was determined to be Peter's father. On 9 August 2011, Judge K. Michelle Fletcher entered an order finding that Peter was a neglected and dependent juvenile, retaining Peter in DSS custody, ordering both of Peter's parents to comply with their case plans, and authorizing visitation between Respondent-Father and Peter.

Although Respondent-Father initially complied with portions of his case plan and developed a loving relationship with Peter, he failed to obtain independent housing, failed a number of substance abuse screens, and engaged in other conduct that raised questions about his ability to successfully parent Peter. On 17 December 2012, DSS filed a petition seeking to have the parental rights of both Peter's mother and Respondent-Father in Peter terminated. On 19 February 2013, Peter's mother relinquished her parental rights in Peter. After conducting a hearing on 25 June 2013, the trial court entered an order on 18 July 2013 determining that Respondent-Father's parental rights in Peter were subject to termination on the grounds that he had (1) neglected Peter; (2) willfully left Peter in foster care for more than twelve months without making reasonable progress toward correcting the conditions that had led to Peter's removal from the home; (3) willfully refused to pay a reasonable portion of the cost of Peter's care despite having the physical and financial ability to do so during the six month period preceding the filing of the termination petition; and (4) failed to establish paternity, legitimate Peter, or provide substantial financial support or consistent care for Peter and his mother and that Peter's best interests would be served by the termination of Respondent-Father's parental rights. Respondent-

Father noted an appeal to this Court from the trial court's order.

## II. Substantive Legal Analysis

In his brief, Respondent-Father contends that the trial court erred by finding that his parental rights in Peter were subject to termination and that Peter's best interests would be served by the termination of his parental rights. More specifically, Respondent-Father contends that the trial court erred by determining that his parental rights in Peter were subject to termination on the grounds of neglect, failure to make reasonable progress, failure to make a reasonable contribution toward the cost of Peter's care, and failure to establish paternity, legitimate Peter, or provide substantial support or consistent care for Peter and his mother on the grounds that the record evidence and the trial court's findings did not support these determinations and by failing to properly consider certain relevant factors in determining that Peter's best interests would be served by the termination of Respondent-Father's parental rights. Respondent-Father's arguments do not justify a decision to overturn the trial court's termination order.

## A. Standard of Review

"The standard of review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law. We then consider, based on the grounds found for termination, whether the trial court abused its discretion in finding termination to be in the best interest of the child." *In re Shepard*, 162 N.C. App. 215, 221-22, 591 S.E.2d 1, 6 (citation and quotation marks omitted), *disc. review denied sub nom. In re D.S.*, 358 N.C. 543, 599 S.E.2d 42 (2004). We will now utilize the applicable standard of review in evaluating the validity of Respondent-Father's challenges to the validity of the trial court's order.

## B. Grounds for Termination

In his initial challenge to the trial court's termination order, Respondent-Father contends that the trial court erred by concluding that he had neglected Peter and that there was a reasonable probability that Peter would be subject to additional neglect in the event that Respondent-Father were to be made responsible for his care. In support of this contention, Respondent-Father argues that the trial court's determination that his parental rights in Peter were subject to termination for neglect lacked adequate support in either the record evidence or the trial court's findings of fact given that Peter

was taken into DSS custody on the basis of his mother's neglect of Peter rather than on the basis of any of Respondent-Father's own conduct and that Respondent-Father's parental rights should not be terminated based upon neglectful conduct engaged in by someone else. We do not find these arguments persuasive.

A parent's parental rights in his or her child are subject to termination on the grounds of neglect pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). A parent neglects his or her child by failing to provide the child with proper care, supervision, discipline or a safe environment, or by abandoning the child. N.C. Gen. Stat. § 7B-101(15). As the Supreme Court has clearly stated:

> [t]he fact that a parent does provide love, affection and concern, although it may be relevant, should not be determinative, in that the court could still find the child to be neglected within the meaning of our neglect and termination statutes. Where the evidence shows that a parent has failed or is unable to adequately provide for his child's physical and economic needs, whether it be by reason of mental infirmity or by reason of willful conduct on the part of the parent, and it appears that the parent will not or is not able to correct those inadequate conditions within a reasonable time, the court may appropriately conclude that the child is neglected.

*In re Montgomery*, 311 N.C. 101, 109, 316 S.E.2d 246, 251-52 (1984). In determining that a parent's parental rights in a child are subject to termination for neglect, the trial court

must conclude that neglect exists at the time of the termination hearing or that there is a probability that neglect will occur in the future. *See In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984). A prior adjudication that the child is abused or neglected is not required in order to terminate parental rights on this ground. *In re Faircloth*, 153 N.C. App. 565, 571, 571 S.E.2d 65, 69 (2002).

In its termination order, the trial court found, among other things, that Respondent-Father had completed a parenting assessment and complied with the recommendations resulting from the assessment, that Respondent-Father had failed to obtain stable housing given that he did not have a permanent place at which he and Peter could live at the time of the termination hearing, and that he had tested positive for alcohol or controlled substances eight times between 3 May 2011 and 16 April 2013 despite participating in substance abuse treatment. More particularly, the trial court found that:

> The father was previously renting a room at a boarding house from his significant other, . . . . [His significant other] had reported to DSS that this was a temporary living situation for the father. Subsequent to that, the father obtained subsidized housing for a brief period of time, but was later evicted, reportedly due to nonpayment of rent. Thereafter he returned to the home of [his significant other]. At some point during the pendency of this matter, [the father's significant other] indicated that

the juvenile could come and stay with [the father] at her home, but [the father] has since been required to leave due to a disagreement between himself and [his significant other's] daughter. [The father] is currently staying with a friend, but has been told that he must vacate that residence within the next 30 days. He does not have another place to live arranged at this time.

. . . .

The father completed a substance abuse assessment on [8 August 2012]. He was referred for outpatient services at Daymark Recovery Center. The father participated in group counseling two times a week. The father is now participating in group sessions two times a week and in Individual sessions two times per month at Family Services of the Piedmont. The father has complied with random drug screens. The father has tested negative for all illicit substances nine separate times since the child came into care. However, the father has tested positive for illicit substances or alcohol as follows:

May 3, 2011 — positive for alcohol
June 4, 2012 — positive for alcohol
July 17, 2012 — positive for cocaine
July 25, 2012 — positive for cocaine
January 5, 2013 — positive for cocaine and
     marijuana
February 25, 2013 — positive for cocaine
March 5, 2012 — positive for cocaine
April 16, 2013 — positive for cocaine

In addition, the trial court found that:

[The father] has not achieved substantial compliance with the objectives of his case plan. He has not been able to provide a secure or stable home for the juvenile or show that he has effectively addressed his substance abuse problem. He has not been

> able to demonstrate that he has been able to translate the teachings of the parenting classes into his own interactions with [Peter]. It is evident that he cares for [Peter] very much, but he has not gained the skills to effectively parent this child or provide a safe and secure home for him.

As a result, the trial court determined that Respondent-Father's parental rights in Peter were subject to termination for neglect as authorized by N.C. Gen. Stat. § 7B-1111(a)(2) given that Respondent-Father "has neglected the juvenile within the meaning of [N.C. Gen. Stat. §] 7B-101, and such neglect is reasonably likely to continue if the said juvenile is returned to his custody and control."

The trial court's findings of fact demonstrate that Respondent-Father is unable to provide for Peter's physical and economic needs, has had to rely upon friends for temporary housing for himself, and has been evicted from subsidized housing for failure to pay rent. The trial court's findings further show that Respondent-Father failed to abstain from the use of illicit substances given the fact that he has tested positive for consumption of alcohol, cocaine, and marijuana on several occasions between 3 May 2011 and 16 April 2013. Finally, the trial court found that Respondent-Father has failed to apply what he has been taught in parenting classes during his own interactions with Peter and has not gained the skills

necessary to parent Peter effectively or provide a safe and secure home for him. As a result of the fact that Respondent-Father has failed to challenge the sufficiency of the record support for these findings, all of which relate to conduct by Respondent-Father rather than by Peter's mother, the relevant findings of fact are presumed to have adequate evidentiary support and are binding upon us for purposes of appellate review. *In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982).

As this Court has previously held, the fact that a parent has failed to provide a stable residence for a child and exposed the child to users of illegal drugs supports a determination of neglect. *In re Helms*, 127 N.C. App. 505, 511-12, 491 S.E.2d 672, 676 (1997). The trial court's findings of fact reveal the existence of just such a situation in this case. As a result, we hold that the trial court's findings have adequate record support; that these findings support the trial court's determination that Respondent-Father has neglected Peter and that there is a reasonable probability that Peter will be neglected if Respondent-Father is made responsible for his care in the future; that the fact that Peter was initially placed into DSS custody as a result of conduct in which Peter's mother engaged does not preclude a determination that Respondent-

Father's parental rights in Peter were subject to termination for neglect; and that the trial court did not err by concluding that Respondent-Father's parental rights in Peter were subject to termination for neglect.[2]

## C. Best Interests Determination

In addition, Respondent-Father contends that the trial court erred by concluding that Peter's best interests would be served by terminating Respondent-Father's parental rights. More specifically, Respondent-Father argues that the trial court failed to properly consider the criteria enunciated in N.C. Gen. Stat. § 7B-1110(a) in making its best interests decision given that it failed to give adequate weight to the strength of Respondent-Father's bond with Peter; failed to give adequate weight to the poor health and advanced age of Peter's prospective adoptive parent, who was his maternal grandmother; and ignored a therapist's testimony to the effect that a

___

[2]Although Respondent-Father has also challenged the trial court's determination that his parental rights in Peter were subject to termination for failure to make reasonable progress toward correcting the conditions that led to his placement in DSS custody, to pay a reasonable portion of the cost of Peter's care, and to establish paternity, legitimate Peter, or provide reasonable financial assistance to or care for Peter and his mother, we need not address these components of Respondent-Father's challenge to the trial court's order given that a single ground for termination suffices to support a determination that a parent's parental rights are subject to termination. *In re P.L.P.*, 173 N.C. App. 1, 8, 618 S.E.2d 241, 246 (2005), *aff'd per curiam*, 360 N.C. 360, 625 S.E.2d 779 (2006).

decision to terminate Respondent-Father's parental rights would not be in Peter's best interests. We do not find these arguments persuasive.

A trial court's decision concerning the extent to which the termination of a parent's parental rights would be in the child's best interests is discretionary in nature and is, as we have already noted, reviewed on appeal using an abuse of discretion standard of review. *In re Anderson*, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002). "A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). According to N.C. Gen. Stat. § 7B-1110(a), the trial court must consider "[t]he age of the juvenile"; "[t]he likelihood of adoption of the juvenile"; "[w]hether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile"; "[t]he bond between the juvenile and the parent"; "[t]he quality of the relationship between the juvenile and the proposed adopting parent, guardian, custodian, or other permanent placement"; and "[a]ny [other] relevant consideration." In making its best interests decision, a trial court is entitled to assign more weight to one or more of the

statutorily delineated factors than to others. *In re C.L.C.*, 171 N.C. App. 438, 448, 615 S.E.2d 704, 709 (2005), *aff'd*, 360 N.C. 475, 628 S.E.2d 760 (2006).

In its order, the trial court found that Peter is six years old and highly adoptable. In addition, the trial court found that the likelihood that Peter would be adopted by his maternal grandmother, who has been involved in his care since birth, who had become his foster parent after Peter was taken into DSS custody, and who had been responsible for his care on a full-time basis for 25 months prior to the termination hearing, was high. The trial court further found that Peter is a bright, healthy, and well-adjusted child; that Peter had thrived in the care of his maternal grandmother; that Peter referred to his maternal grandmother's residence as his home; that Peter knew that his maternal grandmother would provide for all of his needs; and that Peter had known his maternal grandmother to be his caretaker for his entire life. Although the trial court found the bond between Peter and his maternal grandmother was "very strong," it characterized the bond between Peter and Respondent-Father as simply "strong." In apparent recognition of the advanced age and less-than-robust health of Peter's maternal grandmother, the trial court noted that Peter's half-brother, who attends college, has lived with Peter's maternal

grandmother since the age of two, continues to live in that home when he is not attending school, and actively supports his maternal grandmother by helping her care for Peter when he is at home and that one of Peter's uncles has played an active role in Peter's life and has helped Peter's maternal grandmother care for Peter. Although Respondent-Father might have preferred that the trial court weigh the relevant factors differently in making its best interests decision, we are not entitled to disturb a trial court's best interests determination on the grounds advanced in Respondent-Father's brief. As a result, given that a careful analysis of the relevant portions of the trial court's order demonstrates that the trial court carefully weighed the relevant statutory criteria and utilized those statutory criteria to make a reasoned evaluation of whether Peter's best interests would be served by the termination of Respondent-Father's parental rights, we conclude that the trial court did not commit any error of law in the course of making its best interests determination.

## III. Conclusion

Thus, for the reasons set forth above, none of Respondent-Father's challenges to the trial court's order justify a decision to provide an award of appellate relief. As a result, the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Judges ROBERT N. HUNTER, JR., and DAVIS concur.

Report per Rule 30(e).