638 S.E.2d 236 (2006)
In the Matter of T.M., Minor Child.
No. COA06-79.
Court of Appeals of North Carolina.
December 19, 2006.
C. Reid Gonella, Asheville, for petitioner-appellee.
Hall & Hall Attorneys at Law, P.C., by Douglas L. Hall, for respondent-appellant.
Judy N. Rudolph, Asheville, for guardian ad litem-appellee.
GEER, Judge.
Respondent appeals from a 26 July 2005 order adjudicating her son to be a neglected child.[1] Because we conclude that the trial court's findings of fact are supported by clear, cogent, and convincing evidence, we affirm the trial court's order.

Appellate Rules Violations
As a preliminary matter, we observe that the statement of facts in respondent's brief fails to comply with the Rules of Appellate Procedure, which require that a brief contain "a non-argumentative summary of all material facts underlying the matter in controversy. . . ." *238 N.C.R.App. P. 28(b)(5). Respondent's statement of facts, just over a page long, contains almost entirely naked argument and includes no citations at all to the record. Unfortunately, this is not the first time that this Court has admonished respondent's counsel for violations of our appellate rules. See In re B.B., ___ N.C.App. ___, 628 S.E.2d 867, 2006 N.C.App. LEXIS 956, *8-9, 2006 WL 1147771, *3 (2006) (unpublished) (dismissing appeal for rule violations, with Judge Steelman in concurrence stating that "[t]he bombast which appellant labels as `Statement of Facts' meets none of the stated requirements for that portion of the brief" and suggesting counsel "should be personally sanctioned"). We note that respondent's counsel would have further violated the appellate rules had this Court not granted counsel's motion to amend the record on appeal with respect to the assignments of error.
Because we do not believe that respondent should be prejudiced by having had the Appellate Defender appoint counsel who has a tendency to overlook the appellate rules, we choose to sanction respondent's counsel. We believe that a sanction is particularly warranted given the frivolous nature of some of the arguments respondent's counsel chose to assert on appeal. Pursuant to Rules 25 and 34 of the Rules of Appellate Procedure, we direct the Clerk of this Court to enter an order providing that counsel shall personally pay the costs of this appeal.

Facts
Buncombe County Department of Social Services ("DSS") first became involved with Tim's family in August 2003. At the time, respondent was in a relationship that she admitted to DSS involved domestic violence and excessive drinking. Although respondent signed a safety agreement with DSS, in which she agreed not to expose Tim to her boyfriend or other abusive individuals, respondent violated the agreement by allowing Tim to have contact with the boyfriend. Respondent finally terminated the relationship after the boyfriend held her and Tim hostage until the police intervened.
Subsequently, respondent became involved with another boyfriend named Travis. Travis, respondent, and Tim all lived together in the home of respondent's mother. While living with respondent's family, Travis accused the grandmother of being a "nosy bitch" and changed the locks to his and respondent's part of the house. Travis also restricted Tim's contact with the grandmother. When Tim sneaked away to see his grandmother, Travis whipped him.
Ultimately, the grandmother was forced to ask respondent and Travis to move out of her home. While the family was moving, a fight between respondent and her sister took place on the front lawn in the presence of Tim. About the same time, the family agreed with DSS that Tim would stay with the grandmother and that Travis would not be allowed in Tim's presence. While DSS was investigating reports that the agreement was being violated, Travis and Tim were found riding in the same truck.
DSS also learned that, although respondent denied "inappropriate discipline" of the child, respondent would spank Tim with a paint stirrer. Travis admitted that he would spank Tim when the child wet the bed. DSS further learned that Travis directed violent behavior towards animals, "including kicking ducks, throwing cats, and beating dogs."
On 4 February 2005, DSS responded to a report that Travis had physically abused respondent and Tim. When Tim answered the door, respondent yelled for him to get back to his bedroom. Respondent "did not deny the allegations contained in the report" of physical abuse. DSS requested permission to examine Tim for physical injuries, but respondent refused access to the house and the child.
On the same day, DSS filed a petition alleging neglect and obtained non-secure custody of Tim. Upon examining Tim for injuries, social workers noticed a bruise on the side of his face and linear bruises to each side of his waist area. While in foster care and during his psychological evaluations, Tim displayed aggressive, violent, and volatile behavior suggestive of past exposure to traumatic events.
The adjudicatory and dispositional hearing commenced on 31 March 2005, but the district *239 court continued the hearing in order to allow time for respondent, Tim, and Travis to undergo psychological evaluations. The hearing resumed on 29 June 2005, and the court entered an order adjudicating Tim to be a neglected child on 26 July 2005.

Discussion
The role of this Court in reviewing an initial adjudication of neglect is to determine "(1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact." In re Gleisner, 141 N.C.App. 475, 480, 539 S.E.2d 362, 365 (2000) (internal quotation marks and citation omitted). "In a non-jury neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." In re Helms, 127 N.C.App. 505, 511, 491 S.E.2d 672, 676 (1997).
We note at the outset that respondent's appeal suffers from a fatal defect: she has not challenged on appeal the court's conclusions of law. Respondent originally assigned error to the court's third conclusion of law that "[Tim] is a neglected child . . . in that the minor child lived in an environment injurious to his welfare due to repeated exposure to severe ongoing domestic violence between the respondent mother and her male partners." In her brief, however, respondent chose to expressly withdraw this assignment of error. Other than this withdrawn assignment of error, respondent did not assign error to any other conclusion of law.
Respondent's omission eviscerates respondent's appeal since an "appellant must assign error to each conclusion it believes is not supported by the evidence. Failure to do so constitutes an acceptance of the conclusion and a waiver of the right to challenge said conclusion as unsupported by the facts." Fran's Pecans, Inc. v. Greene, 134 N.C.App. 110, 112, 516 S.E.2d 647, 649 (1999) (internal citation omitted). Having withdrawn her assignment of error as to the third conclusion of law, respondent effectively accepted the trial court's conclusions in toto. Notwithstanding her various challenges to the trial court's factual findings, failure to challenge any conclusion of law precludes this Court from overturning the trial court's judgment. Id. (summarily affirming trial court's ruling on issue that was subject of unchallenged conclusion of law); see also In re J.A.A., 175 N.C.App. 66, 74, 623 S.E.2d 45, 50 (2005) (applying Fran's Pecans in termination of parental rights appeal). Nonetheless, even ignoring this fatal defect, our review of respondent's arguments on appeal reveals that they do not support reversal of the trial court's order.

I
Respondent contends that the trial court was without authority or jurisdiction to hear the case because the adjudication hearing was not held within 60 days from the filing of DSS' petition as required by N.C. Gen.Stat. § 7B-801(c) (2005). We note that respondent's suggestion that violations of statutory time limitations deprives a trial court of subject matter jurisdiction is contrary to the well-established law. As this Court stated in In re C.L.C., 171 N.C.App. 438, 443, 615 S.E.2d 704, 707 (2005), aff'd per curiam in part and disc. review improvidently allowed in part, 360 N.C. 475, 628 S.E.2d 760 (2006), "time limitations in the Juvenile Code are not jurisdictional in cases such as this one and do not require reversal of orders in the absence of a showing by the appellant of prejudice resulting from the time delay." See also In re S.W., ___ N.C.App. ___, ___, 625 S.E.2d 594, 596 (holding that respondent must show prejudice as a result of an untimely termination of parental rights hearing), disc. review denied, 360 N.C. 534, 635 S.E.2d 59 (2006). Respondent has made no serious attempt to establish prejudice.
In any event, the record reveals no violation of § 7B-801(c). The petition in this case was filed on 7 February 2005, and the adjudication hearing was commenced on 31 March 2005-within the 60-day requirement. On 5 April 2005, the court decided to continue the proceedings in order to allow for psychological evaluations of respondent, Tim, and Travis. Respondent argues that this continuance made the hearing untimely.
*240 N.C. Gen.Stat. § 7B-803 (2005), however, specifically allows a court, for good cause, to continue a hearing for receipt of additional evidence, reports, or assessments. Once the trial court determined that additional input from psychological experts was necessary to resolve the issue of neglect, it was entitled to continue the hearing so that such information could be obtained. Respondent, notably, did not object to the continuance, but rather agreed to cooperate and participate with respect to the further evaluations.
Respondent nonetheless argues on appeal that N.C. Gen.Stat. § 7B-801(c) grants only the chief district court judge authority to order a continuance. We cannot agree with this interpretation of the statute. N.C. Gen. Stat. § 7B-801(c) provides:
The adjudicatory hearing shall be held in the district at such time and place as the chief district court judge shall designate, but no later than 60 days from the filing of the petition unless the judge pursuant to G.S. 7B-803 orders that it be held at a later time.
We hold that nothing in this statute precludes the trial judge assigned to decide a petition to grant a continuance under § 7B-803. As § 7B-803 recognizes, the judge presiding over a hearing must be able to exercise his or her discretion to continue a hearing if circumstances warrant it. See N.C. Gen.Stat. § 7B-803 ("[t]he court may, for good cause, continue the hearing for as long as is reasonably required" (emphasis added)). The General Assembly could not have intended to tie a trial judge's hands by limiting the power to grant continuances to a single chief district court judge not necessarily familiar with the facts of a case.
Respondent makes no argument that the court's decision to order a continuance beyond the 60-day mark lacked "good cause." We, therefore, hold that the proceedings in this case complied with the statutory time limitations of N.C. Gen.Stat. § 7B-801(c).

II
Respondent challenges a number of the trial court's findings of fact as not being supported by competent evidence. She first contends that the trial court's findings improperly rely upon testimony of the grandmother, which-according to respondent-she ultimately "recanted." Respondent failed, however, to assign error to specific findings of fact that detail various incidents of violence. Those findings as to the domestic violence are, therefore, binding on appeal and form a basis for the trial court's conclusions of law. Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).
In any event, we conclude that the trial court was entitled to rely upon the grandmother's testimony. It is true that the grandmother, when she was recalled as a witness by respondent, attempted to cast doubt on her earlier testimony regarding Tim's exposure to domestic violence by suggesting that she had troubles with her memory. Nevertheless, her subsequent statements were far from a recantation. When asked by respondent's attorney if she had ever witnessed domestic violence between respondent and Travis, she replied, "I've seen Travis bring her in one time to the living room by her feet. I forget parts. I had a memory loss later on. . . ." Responding to questions from the DSS attorney, the grandmother again remembered that Travis had "whipped" Tim: "I just heard Travis say, `You peed in the floor,' and he whipped him." The grandmother even commented that Travis' use of force against respondent was only his effort to try to "keep [respondent] from hitting him." Thus, the grandmother in fact corroborated her own earlier testimony. Regardless, the trial court was entitled to decide whether to credit the grandmother's initial testimony or a subsequent purported recantation.
With respect to respondent's remaining challenges to the court's factual findings, we agree that some of them are not supported by evidence in the record. When, however, ample other findings of fact support an adjudication of neglect, erroneous findings unnecessary to the determination do not constitute reversible error. See In re Beck, 109 N.C.App. 539, 548, 428 S.E.2d 232, 238 (1993) (where no evidence supported a particular finding, inclusion of this finding in the order was immaterial and not prejudicial because *241 even "[i]f the erroneous finding [was] deleted, there remain[ed] an abundance of clear, cogent, and convincing evidence to support a finding of neglect").
Here, the erroneous findings are in no way necessary to the court's conclusion that Tim's exposure to domestic violence rendered him a neglected juvenile. The order at issue contains numerous unchallenged findings of fact establishing Tim's exposure to an environment of violence, including respondent's prior abusive relationship with the first boyfriend, respondent's inability to abide by the safety agreements designed to insulate her child from domestic abuse, physical abuse by Travis and respondent, DSS' observations of bruising on Tim, and Tim's own displays of aggressive, volatile behavior since in DSS custody. These findings of fact fully support the court's conclusion that Tim was neglected on account of his exposure to severe domestic violence. See In re K.D., ___ N.C.App. ___, ___, 631 S.E.2d 150, 155 (2006) (upholding adjudication of neglect where "[r]espondent mother's struggles with parenting skills, domestic violence, and anger management, as well as her unstable housing situation, have the potential to significantly impact her ability to provide `proper care, supervision, or discipline'" for child (quoting N.C. Gen.Stat. § 7B-101(15) (2005))); Helms, 127 N.C.App. at 512, 491 S.E.2d at 676 (upholding adjudication of neglect where, in part, respondent mother "placed [child] at substantial risk through repeated exposure to violent individuals").

III
Respondent's assignments of error as to Findings of Fact 24 through 28 must be specifically addressed. Respondent challenges each of these findings, which are based on the testimony of Dr. Shepherd-LeBreque, because "this physician did not testify." The trial transcript shows, however, that the physician did testify.
Respondent's contrary argument seems based on the first version of transcript volume one that was delivered on 26 October 2005. This version did not contain the testimony of Dr. Shepherd-LeBreque. On 3 January 2006, however, an updated version was sent to counsel for all parties, including respondent's counsel, and this version contained the doctor's testimony. In fact, the copy of the updated transcript on file with this Court bears a stamp marked "Received" by respondent's counsel dated 5 January 2006. It is, therefore, bewildering that respondent's brief would assert that the doctor "did not testify." Further, once DSS and the guardian ad litem pointed out respondent's error, respondent should have withdrawn this argument, but chose not to do so. The trial court's factual findings are thus sufficiently supported by evidence in the record, and respondent's argument is frivolous.

IV
Respondent next asserts that the admission of out-of-court statements of Tim constitutes a violation of respondent's rights under the Confrontation Clause of the U.S. Constitution and North Carolina Constitution. Prior to the filing of respondent's brief in this appeal, this Court had already held that the protections of the Confrontation Clause do not apply in civil cases of this nature. In re B.D., 174 N.C.App. 234, 243, 620 S.E.2d 913, 919 (2005), disc. review denied, 360 N.C. 289, 628 S.E.2d 245 (2006); In re D.R., 172 N.C.App. 300, 303-04, 616 S.E.2d 300, 303-04 (2005). Respondent's constitutional argument, therefore, has no merit.
Respondent argues alternatively that Tim's statements constituted inadmissible hearsay. Assuming without deciding that the statements attributed to Tim were inadmissible hearsay, respondent falls far short of demonstrating the kind of prejudice necessary for this Court to reverse the trial court's order. See In re M.G.T.-B., ___ N.C.App. ___, ___, 629 S.E.2d 916, 919 (2006) ("even when the trial court commits error in allowing the admission of hearsay statements, one must show that such error was prejudicial in order to warrant reversal"). Respondent makes a single cursory, unsubstantiated claim that the admission of the hearsay statements "constitute[d] prejudicial error."
In the absence of a particularized showing of prejudice, any error cannot justify reversal. Indeed, even disregarding the challenged *242 hearsay statements, the court's findings and conclusions are amply supported by other evidence. See In re McMillon, 143 N.C.App. 402, 411, 546 S.E.2d 169, 175 ("Where there is competent evidence to support the court's findings, the admission of incompetent evidence is not prejudicial."), disc. review denied, 354 N.C. 218, 554 S.E.2d 341 (2001).

V
Respondent also stages a generalized attack against the entirety of the court's order. Quoting the trial judge's oral adjudication of neglect, respondent claims in her brief that "[t]he Court made no findings of fact whatsoever in support of this decision." This argument ignores the court's entry of a written order containing 37 findings of fact as to the neglect adjudication alone. The trial judge was not required to make detailed findings of fact in open court. See N.C. Gen.Stat. § 7B-807(b) (2005) (an "adjudicatory order shall be in writing and shall contain appropriate findings of fact and conclusions of law"); In re Bullabough, 89 N.C.App. 171, 179, 365 S.E.2d 642, 646 (1988) (trial judge not required "to announce in open court his findings and conclusions").
Respondent dismisses the written order on the ground that it "was likely drafted by the Petitioner's attorney and does not constitute findings of fact by the trial judge." This Court has previously rejected this argument. See In re J.B., 172 N.C.App. 1, 26, 616 S.E.2d 264, 279 (2005) (finding no error when trial court directed that petitioner draft the order).
Respondent's next attack on the order is equally meritless. She claims that the trial court's findings are mere "recitations of testimony given or documents received into evidence." Significantly, respondent does not identify a single specific finding in the record to support her argument. In fact, a review of the order reveals that the trial court made ample ultimate findings of fact and did not merely include "recitations" of the evidence.

VI
With respect to the dispositional order, respondent has not challenged the court's conclusions of law or any aspect of the decretal portion of the order. Instead, respondent argues that the trial court erred in referring to respondent's psychological evaluation and in concluding that a DSS witness, Dr. Cynthia Brown, an admitted expert in pediatrics and child sexual abuse, including child medical evaluations, was also an expert in the field of making recommendations for counseling of abused children. We disagree with both contentions.
As for the psychological evaluation, DSS concedes this evaluation was excluded during the adjudication hearing, but argues that this does not preclude consideration of the report at the disposition hearing. A "dispositional hearing may be informal and the court may consider written reports or other evidence concerning the needs of the juvenile." N.C. Gen.Stat. § 7B-901 (2005). Further, "[t]he court may consider any evidence . . . that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition." Id. Interpreting this statute, this Court in In re M.J.G., 168 N.C.App. 638, 648, 608 S.E.2d 813, 819 (2005), approved a disposition order where the trial court considered reports that had not been formally moved into evidence. Accordingly, we hold that the trial court did not err by considering the psychological evaluation of Tim's mother in reaching its decision on disposition.
With respect to Dr. Brown, the court made an oral finding during the adjudicatory phase that as an expert "in pediatrics and child sexual abuse matters, including child medical evaluations of children suspected of child sexual abuse, neglect, physical or mental abuse . . .," Dr. Cynthia Brown was also "an expert in the field of making recommendations for counseling of suspected abused children." We note that respondent has failed to set forth the standard of review on this issue as required by N.C.R.App. P. 28(b). Significantly, it is well established that "[w]here a judge finds a witness qualified as an expert, that finding will not be reversed unless there was no competent evidence to support the finding or unless the *243 judge abused his discretion." State v. Young, 312 N.C. 669, 679, 325 S.E.2d 181, 188 (1985).
In voir dire, Dr. Brown never asserted that she was qualified to conduct psychological evaluations or counseling, but she did testify that in the course of her professional duties she frequently recommends counseling to her patients. Accordingly, the court was well within its discretion to accept Dr. Brown as an expert with respect to counseling recommendations.
Further, respondent has not suggested that counseling was inappropriate or pointed to any testimony of Dr. Brown that she contends was outside Dr. Brown's area of expertise. At most, respondent raises an academic issue. On the whole, we find respondent's objection with respect to Dr. Brown to be frivolous. A pediatric doctor, who specializes in abuse cases, is certainly qualified to recommend counseling to her allegedly abused patients. Cf. In re Thompson, 64 N.C.App. 95, 101, 306 S.E.2d 792, 795 (1983) (noting that a conclusion of neglect was supported where a pediatrician's recommendations that child be "evaluated" and receive counseling were not followed by respondent mother). This assignment of error is, therefore, overruled.
Affirmed.
Judges CALABRIA and JACKSON concur.
NOTES
[1] Throughout this opinion, we will refer to the child by the pseudonym "Tim."