INMAN, Judge, concurring.
I agree with the majority's conclusions affirming the trial court's adjudication and disposition of both Clara's and Anna's cases with respect to both parents. This case is nonetheless complicated by the array of evidence, some of it not admissible for consideration at adjudication but admissible at the disposition phase, and much of it related to acts committed years before the filing of the juvenile petitions. Accordingly, I write separately to address these issues.
Additional Factual and Procedural Background
On 9 October 2013, CCDSS filed juvenile petitions alleging that Clara, then age 4, was an abused and neglected juvenile and that Anna, then age 18 months, was a neglected juvenile. In Clara's petition, in support of its allegation that Clara was sexually abused, CCDSS alleged the following: On 21 September 2013, CCDSS received a report alleging that Clara had been sexually abused by Father. The report claimed that Clara had disclosed sexual abuse on three separate occasions: (1) to her paternal great aunt Elizabeth Duncan ("Elizabeth"); (2) to a social worker during a home visit on 21 September 2013; and (3) during a forensic interview at the Robin's Nest, a center that offers counseling and therapeutic services for children, on 23 September 2013. In both juveniles' petitions, CCDSS alleged that Clara and Anna were neglected, reasserting the facts regarding Father's alleged sexual abuse and further alleging that Father had "popped [Clara] on the mouth." The petitions stated that "[r]elatives of [Father] have stated that [Mother] has disclosed domestic violence occurring between herself and [Father] on numerous *454 occasions, including choking her and slapping her in the face." The petitions alleged that Clara and Anna were neglected because, in their parents' home, they did not receive proper care, supervision, or discipline and lived in an environment injurious to their welfare.
The trial court entered Orders for Nonsecure Custody on 9 October 2013 for both juveniles based on the allegations contained in the juvenile petitions.
The adjudication hearing was held on 26 February, 26 March, and 22 April 2014, approximately six months after the juveniles were removed from their parents' home. The evidence presented included testimony by Clara that Father had "popped" her in the mouth and that Clara had reported to someone else that she saw Father hit Anna. Father and Mother admitted that Father hit Clara in the mouth on one occasion.
On 22 April, the trial court entered an order adjudicating both juveniles as neglected. The trial court dismissed the abuse allegations.
*323 In its order, the trial court made the following pertinent findings of fact:
24. The court finds that the facts set forth herein are true and sufficient to find that the juveniles are neglected juveniles pursuant to N.C.G.S. § 7B-101(15) in that the juveniles do not receive proper care, supervision, or discipline from the juveniles' parent, guardian, custodian, or caretaker and lives in an environment injurious to the juveniles' welfare.
25. The court finds the facts are true as clear, cogent, and convincing evidence.
26. Respondent father has engaged in at least one act of domestic violence toward the juvenile, [Clara]. The juvenile, [Clara], has been physically struck by Respondent father on at least one occasion wherein Respondent father popped [Clara] in the mouth leaving a mark on the juvenile's mouth which included a swollen and busted lip.
27. Respondent father has engaged in at least one act of domestic violence toward the juvenile, [Anna]. The juvenile, [Anna], has been physically struck by Respondent father on at least one occasion. The juvenile, [Clara], witnessed Respondent father strike [Anna].
28. The juvenile, [Clara], is fearful or scared that she will receive a whipping or spanking from Respondent father if she states anything that has happened while she resided with Respondent mother and Respondent father.
*455 29. Respondent father has problems controlling his anger. His angry temperament was noticed by Elizabeth Duncan when he was a child and his temper got worse as he got older. Respondent mother began noticing Respondent father's anger management issues after the juvenile, [Clara], was born.
30. Respondent father has engaged in aggressive and violent behaviors in the home where the juveniles resided with him and Respondent mother. Respondent father engages in activities such as punching holes in walls and doors of his home, and throwing and breaking more than one cellular telephone when he is angry. On one occasion, Respondent father broke his hand from punching a wall in the family home. Respondent father has stated that when he gets angry or mad, he just has to hit something. These activities have occurred in the home where Respondent father resides with Respondent mother and the juveniles prior to the juveniles being removed from the family home on October 8, 2013.
31. A variety of family members have observed the holes in the walls and doors of the family home including Dakota Duncan, Elizabeth Duncan, and William Woods. Mr. Woods assisted Respondent father in repairing at least one hole in the wall of the family home.
32. Respondent father has engaged in acts of domestic violence toward Respondent mother after their first child, [Clara], was born. When [Clara] was an infant, Respondent father choked Respondent mother. Family members have observed bruises on Respondent mother including a bruise on her side and a black eye. Respondent mother has stated to family members that Respondent father caused those bruises.
33. At the time the juveniles were removed from the family home, Respondent father had not been receiving consistent treatment and/or medication for his anger management issues.
Custody of the juveniles remained with CCDSS. The trial court allowed Mother to have weekly supervised visitation with Anna but suspended Mother's visits with Clara for 30 days. After 30 days, Mother was allowed *456 to have weekly supervised visitation with Clara. The trial court continued the matter for disposition until 21 May 2014.
On 21 May 2014, the trial court entered its disposition order. In addition to the above referenced findings in the adjudication order, the disposition order contained additional findings indicating that Mother had begun parenting classes, domestic violence counseling, and mental health counseling. The order also indicated that Father had attended parenting classes, anger management group sessions, and had received mental health services. The trial court concluded that it was in the juveniles' best interests to have custody *324 remain with CCDSS but that "[CCDSS] should make reasonable efforts to reunify the juveniles with" Mother and Father. The trial court also ordered Father to complete a sexual abuse intervention service (SAIS) assessment because, even though CCDSS had managed to provide payment for the evaluation, Father "refused to participate in the evaluation until ordered by the court." The trial court set a review hearing for 13 August 2014 pursuant to N.C. Gen.Stat. § 7B-906. Mother and Father appeal.
Standard of Review
This Court reviews an order in a juvenile neglect proceeding to determine "(1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact." In re T.M., 180 N.C.App. 539, 544, 638 S.E.2d 236, 239 (2006). "If there is evidence to support the trial court's findings of fact, they are deemed conclusive even though there may be evidence to support contrary findings." In re W.V., 204 N.C.App. 290, 293, 693 S.E.2d 383, 386 (2010).
Analysis
In support of its conclusion that the trial court properly determined that Clara and Anna were neglected, the majority relies on the trial court's findings that Father had punched holes in the walls, Father had engaged in "aggressive and violent behaviors in the home," Father "popped" Clara in the mouth, Clara is scared of Father, and Clara witnessed Father strike Anna. Noting the lack of findings indicating Mother's culpability in these actions, the majority relies on Matter of Montgomery, 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984), for the premise that
[i]n determining whether a child is neglected, the determinative factors are the circumstances and conditions surrounding the child, not the fault or culpability of the parent. Therefore, the fact that the parent loves or is concerned *457 about his child will not necessarily prevent the court from making a determination that the child is neglected.
I agree that, given the living circumstances at issue here-a nonviolent parent and children living with a violent parent-the trial court did not have to make any findings addressing Mother's culpability in order to determine that Clara and Anna were neglected by both parents. However, the majority opinion does not address the fact that many of Father's aggressive and violent actions, such as punching holes in the walls and destroying cell phones, occurred more than a year before the adjudication order, and that the history of domestic violence between the parents primarily occurred around the time when Clara was born.
I. The History of Domestic Violence Between Mother and Father
With regard to the history of domestic violence between them, both parents contend, and even the trial court acknowledges, that the acts of domestic violence occurred prior to Anna's birth, i.e., at least two years before the filing of the petitions. They argue that because there was no evidence showing domestic violence at the time the petitions were filed, or at the time the matter came on for hearing, those past acts could not serve as a basis for an adjudication that their children were neglected.
This Court has held in an unpublished opinion that a past history of domestic violence can be considered when determining whether a juvenile is neglected. See In re H.R., 2012 WL 5864525, *4 (Nov. 20, 2012) (COA12-549) (unpublished). As this Court noted in In re H.R., quoting In re McLean, 135 N.C.App. 387, 396, 521 S.E.2d 121, 127 (1999), "the decision of the trial court [at the adjudicatory hearing] must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future neglect of a child based on the historical facts of the case." Accordingly, "the trial court could consider events [of prior domestic violence] which occurred more than one year prior to the filing of the petition." Id.
Here, the trial court found that
32. Respondent father has engaged in acts of domestic violence toward Respondent mother after their first child, [Clara], was born. When [Clara] was an infant, Respondent father choked Respondent *325 mother. Family members have observed bruises on Respondent mother including a bruise on her side and a black eye. Respondent mother *458 has stated to family members that Respondent father caused those bruises.
Both Mother and Father challenge this finding, arguing that the evidence as to the domestic violence was "controverted" given their denials at the hearing. However, the parents' denials were contradicted by other competent evidence offered at the hearing, including testimony by Dakota Duncan ("Dakota"), a relative. Dakota testified that Mother told Dakota that Father had choked Mother when Clara was about one month old. This testimony is not hearsay, because it is as an admission of a party-opponent. N.C. Gen.Stat. § 8C-1, Rule 801(d) ; In re Hayden, 96 N.C.App. 77, 81, 384 S.E.2d 558, 561 (1989) (noting that a mother's statements to social workers about the father's conduct were admissions by her that the child was subject to conduct in her presence that could be found to be abusive and neglectful, and therefore, those statements were admissible). Dakota also testified that Father had punched holes in the walls in anger after Anna was born. Elizabeth, who is Father's aunt, testified that she had seen bruises on Mother up until the time Anna was born and holes in the walls where Father had punched them.
Moreover, this past history of domestic violence must be considered in light of the undisputed evidence that Father has "popped" Clara on at least one occasion. Contrary to the dissenting opinion's characterization of this incident as "discipline," the trial court, which had the opportunity to consider the witnesses' demeanor and credibility, found that it was domestic violence. See generally In re M.J.G., --- N.C.App. ----, ----, 759 S.E.2d 361, 366 (2014) (noting that in juvenile adjudication hearings, "the court is empowered to assign weight to the evidence presented at the trial as it deems appropriate" and any conflicts in the evidence are resolved by the trial court); Matter of Helms, 127 N.C.App. 505, 511, 491 S.E.2d 672, 676 (1997) ("[T]he trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings.").
Based on the foregoing circumstances found by the trial court and supported by the evidence, the trial court was not required to "hope for the best and await yet another act of domestic violence," In re Schoen, 2003 WL 21790460, *6 (Aug. 5, 2003) (COA02-406) (unpublished), before it considered Father's past history of domestic violence in order to support a finding of neglect, even if that history occurred several years before the juvenile petitions were filed.
Finally, it is important to note that an order adjudicating and disposing the juveniles as "neglected" is not the same as an order terminating *459 the parents' parental rights. See Matter of Evans, 81 N.C.App. 449, 452, 344 S.E.2d 325, 327 (1986) ("[T]he task at the temporary custody or removal stage is to determine whether the child is exposed to a substantial risk of physical injury because the parent is unable to provide adequate protection."). The trial court ordered that both Mother and Father continue to receive counseling and support services to address the past domestic violence but was clear in its orders that reunification efforts be continued. Both Mother and Father will have further opportunities to present to the trial court evidence that they contend shows circumstances have changed sufficiently to reunify them with their children.
II. The Adjudication and Disposition of Anna as Neglected
In support of its determination that Anna was neglected, the trial court, and the majority, rely on Father's past aggressive and violent acts in the home, Father "popping" Clara in the mouth, and Clara's testimony that she had witnessed Father hit Anna on one occasion. Father contends that Clara's ambivalent testimony regarding her report that Father had hit Anna does not rise to level of "convincing competent evidence." In re A.B., 179 N.C.App. 605, 610, 635 S.E.2d 11, 15 (2006). However, I do not believe it is necessary to address whether the trial court's finding that Clara saw Father hit Anna was supported by clear and convincing *326 evidence given the other evidence presented at the hearing. See In re T.M., 180 N.C.App. 539, 547, 638 S.E.2d 236, 240 (2006).
N.C. Gen.Stat. § 7B-101(15) states that "[i]n determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile ... lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home." This Court has held that "the fact of prior abuse [of another child in the home], standing alone, is not sufficient to support an adjudication of neglect. Instead, [we have] generally required the presence of other factors to suggest that the neglect or abuse will be repeated." In re J.C.B., --- N.C.App. ----, ----, 757 S.E.2d 487, 489 (2014). Those "other factors" may include a history of domestic violence between the parents. See In re C.M. & M.H.M., 198 N.C.App. 53, 66, 678 S.E.2d 794, 801-02 (2009) (affirming adjudication of neglect based upon prior abuse of another child who lived in the home and a history of domestic violence between the parents).
Here, while Father's admission to hitting Clara in the lip does not necessarily mandate an adjudication of neglect for Anna, the presence of "other factors"-specifically, the history of domestic violence between Father and Mother and evidence of Father's violent and aggressive acts-in addition to Father's act of domestic violence against Clara are *460 sufficient to support a determination, on clear and convincing evidence, that Anna is also neglected based on the likelihood that the acts of violence perpetuated against Clara and Mother will be repeated against her.
Furthermore, although Mother was not directly responsible for the acts which led to the filing of the petitions, see Montgomery, 311 N.C. at 109, 316 S.E.2d at 252, I believe that the trial court properly considered the history of domestic violence between Mother and Father in addition to the fact that Father hit Clara in adjudicating both juveniles as neglected by both parents.
III. Disposition Order Requiring Father to Complete a Sexual Abuse Assessment.
Finally, I write separately to address more fully the trial court's disposition order requiring Father to participate in and complete the SAIS assessment. Father argues that this requirement was improper because it bears no relation to the adjudication of neglect and is based on inadmissible evidence regarding Father's sexual activity when he himself was a juvenile. The dissenting opinion asserts that this requirement in the disposition order shows that the trial court improperly relied upon inadmissible evidence for its adjudication of neglect.
N.C. Gen.Stat. § 7B-904(c) provides, in pertinent part, that
[a]t the dispositional hearing or a subsequent hearing the court may determine whether the best interests of the juvenile require that the parent ... undergo psychiatric, psychological, or other treatment or counseling directed toward remediating or remedying behaviors or conditions that led to or contributed to the juvenile's adjudication or to the court's decision to remove custody of the juvenile from the parent.
Even though the trial court ultimately concluded that there was not sufficient clear and convincing evidence to adjudicate Clara as abused, the trial court properly considered, in the disposition phase of this matter, evidence that Father had engaged in inappropriate sexual activities with his younger cousin Cynthia in 2003, when he was around 12 years old and Cynthia was 9, and that he himself had been a child victim of sexual abuse. Specifically, according to the social worker who investigated the 2003 incidents, Father reported that he was the victim of sexual abuse by his uncle, who was eventually convicted of abusing several children, including Cynthia, his biological daughter. Although *461 this evidence was arguably inadmissible in the adjudication hearing, N.C. Gen.Stat. § 7B-901 provides the trial court with wide discretion to consider, for purposes of disposition, any competent evidence, including evidence ordinarily prohibited by Rule 404. Additionally, although *327 Clara in her testimony repeatedly denied that Father had sexually abused her, her report to three adults that Father had " tip-toed" into her room at night and "touched her pee-pee" unquestionably led to the removal of Clara and Anna from the home and involved Clara and her parents in a sexual abuse investigation. Clara reported to a social worker and later to a therapist that Father had touched her "pee-pee" on numerous occasions. Her reports were articulate and detailed. This hearsay evidence was not competent to support an adjudication of neglect, but, as noted by the majority, it was competent and entirely proper for the trial court's consideration in disposition. N.C. Gen.Stat. § 7B-901 (2013).
Based on this evidence, the trial court was within its discretion to order Father participate in an SAIS assessment.
Conclusion
Based on the foregoing reasons, I also vote to affirm the trial court's orders adjudicating and disposing the juveniles as neglected.