BRYANT, Judge.
Where the trial court's findings of fact were sufficient to support its conclusion that a juvenile lived in an environment injurious to her welfare, we affirm the order of the trial court.
The instant action stems from a Child Protective Services report Forsyth County Department of Social Services ("DSS") received on or about 11 April 2015 concerning A.P. ("Andrew"),[1] who was five months old at the time. Andrew's mother had taken Andrew to the emergency room after noticing that he was lethargic, fussy, and unable to hold his head up. She later told a social worker that she first noticed that Andrew was not feeling well a few days earlier, but she thought that he might have a stomach virus. When Andrew failed to get better, she became concerned that something more serious was wrong with him. At the hospital, Andrew was diagnosed with non-accidental traumatic injury, including bleeding on the inside of his skull, retinal hemorrhages, a broken leg, facial bruising, and eight fractured ribs. The mother told a social worker that she was not sure what happened to Andrew, but that respondent-father had just reported that Andrew's one-year-old sister, E.P. ("Edith"),[2] had pulled Andrew off the bed a few days prior. Respondent-father claimed that he stepped away to prepare a bottle and found Andrew on the floor when he returned. Respondent-mother also admitted noticing the bruising on Andrew's face, but respondent-father told her that Edith had hit him with a candle. The mother worked nights three days a week, and these incidents purportedly happened while she was working.
On 15 April 2015, respondent-father was interviewed by a DSS social worker regarding Andrew's injuries. He recounted that the injuries were caused by Edith, and gave the same explanations that he had given the mother. Respondent-father also named a few other individuals who had access to Andrew, including a friend of his who is a registered sex offender. After interviewing the parents separately, DSS brought them together and told them that their explanations did not match the extent of Andrew's injuries. Respondent-father eventually told DSS that he "shook" Andrew. He explained that Andrew would not stop crying, so he picked Andrew up, shook him hard, and then threw him forcefully into his crib. Respondent-father stated that Andrew's head hit the side of the crib, and that Andrew was quiet and slept afterwards. He also gave a statement to the police. Based on respondent-father's admission, the parents entered into a safety plan in which they agreed respondent-father would not have contact with the children.
On 17 May 2015, Andrew's hematomas required surgical intervention. He was discharged from the hospital on or about 29 May 2015. Andrew was brought back to the emergency room one day later due to nausea and vomiting. He was admitted, and medical staff ruled out continuing non-accidental trauma. Andrew was discharged again on 3 June 2015.
On 16 July 2015, the mother voluntarily dismissed a Domestic Violence Protective Order ("DVPO") she had obtained against respondent-father, claiming that she no longer believed he was responsible for Andrew's injuries. On 22 July 2015, respondent-father was arrested and charged with felony child abuse. The mother posted bail for him in September, and he moved back into the family home upon release.
On 2 December 2015, DSS obtained nonsecure custody of the juveniles and filed petitions alleging that Andrew was an abused and neglected juvenile and that Edith was a neglected juvenile. Following a hearing, the trial court entered an order on 10 June 2016 concluding that Andrew was abused and neglected and that Edith was neglected. At the hearing, the trial court heard expert testimony from the pediatrician who treated Andrew. Based on the pediatrician's testimony, the trial court found that Andrew suffered all of his injuries in the week preceding his hospitalization; that his rib fractures could have occurred on more than one occasion and were caused by squeezing him around the rib cage; that Andrew's retinal hemorrhages were serious and would have required significant force, such as severe shaking or slamming; and that Andrew's injuries were extremely serious and could have resulted in permanent eye damage, permanent brain damage, or death.
The trial court also found that the mother allowed respondent-father back into the home upon pretrial release, that he had caretaking responsibility for the children, and that this created an environment injurious to the well-being of both Edith and Andrew. The trial court concluded that it was in the juveniles' best interest to remain in DSS custody, with placement outside the home. Respondent-father appeals. The mother does not appeal.
_________________________
On appeal, respondent-father challenges the trial court's conclusion that Edith was a neglected juvenile.[3] A neglected juvenile is defined as follows:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15) (2015). Additionally, this Court has required "that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide 'proper care, supervision, or discipline.' " In re Safriet , 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (citations omitted) (quoting In re Thompson , 64 N.C. App. 95, 101, 306 S.E.2d 792, 796 (1983) ). "Allegations of neglect must be proven by clear and convincing evidence. In a non-jury neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." In re Helms , 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997) (citations omitted). If competent evidence supports the findings, they are "binding on appeal." In re McCabe , 157 N.C. App. 673, 679, 580 S.E.2d 69, 73 (2003) (citation omitted).
Respondent-father challenges Finding of Fact Nos. 19, 21, 35, and 38.[4] In Finding of Fact No. 19, the trial court found that Andrew's injuries likely occurred during "multiple incidents of abuse to the child." Respondent-father does not specifically challenge this finding as lacking evidentiary support. Rather, he claims that it is "misleading," because while the pediatrician testified that two incidents of abuse caused Andrews' injuries, use of the word "multiple" suggests more than two incidents. We are not persuaded. As DSS notes, the word "multiple" is defined as "consisting of more than one individual, part, or other component[.]" The American Heritage College Dictionary 896 (3d ed. 1997). Because respondent-father concedes that the pediatrician was of the opinion that two different incidents caused Andrew's injuries, this finding is supported by competent evidence.
In Finding of Fact No. 21, the court found that respondent-father provided care for the children when the mother was working, and that both parents provided care for the children when the mother was not working. Similar to his previous challenge, while not disputing the factual underpinning for this finding, respondent-father contends that it is misleading because the children had other caretakers on occasion. Again, we are not persuaded. Respondent-father concedes that this finding is supported by the evidence, and the trial court's findings of fact make it clear that the trial court chose not to believe respondent-father's recantation or his allegation that the injuries were caused by a friend. Accordingly, this finding is supported by competent evidence.
Next, Finding of Fact No. 35 states as follows:
After [respondent-father's] incarceration [the mother] began communicating with him and visiting him in the jail. She signed for him to be released from jail and upon his release [respondent-father] moved back into the family home and again had caretaking responsibility for [Andrew] and [Edith]. The Court finds that this created an environment injurious to the wellbeing of [Andrew] and [Edith].
Respondent-father argues that this finding cites the statutory definition of neglect and is therefore a conclusion of law. In reviewing findings of fact and conclusions of law, this Court is able to look beyond the labels assigned by the trial court. See In re M.R.D.C. , 166 N.C. App. 693, 697, 603 S.E.2d 890, 893 (2004) ("[I]f [a] finding of fact is essentially a conclusion of law ... it will be treated as a conclusion of law which is reviewable on appeal." (alterations in original) (citations omitted)). To the extent that this finding would have been more appropriately categorized as a conclusion of law, we treat it as such. Respondent-father's remaining challenge to this finding is identical to his argument that the findings of fact do not support the conclusion that Edith was a neglected juvenile, and we therefore need not address it.
Finally, in Finding of Fact No. 38, the trial court found that both parents admitted to incidents of domestic violence "in the presence of the children." Respondent-father argues that while the mother admitted to hitting respondent-father, there is no evidence that either party engaged in domestic violence in front of the children. We agree. While the parents admitted to domestic violence in the home, they denied that it occurred in front of the children, and the record does not contain any evidence to the contrary. Therefore, we disregard and strike the portion of this finding that states "in the presence of the children."
Next, respondent-father argues that the findings of fact are insufficient to establish a conclusion that Edith lived in an environment injurious to her welfare. Specifically, he argues that the case is about what happened to Andrew, not Edith. He contends that abuse of another child, standing alone, is insufficient to support an adjudication of neglect, and that the trial court failed to make findings of fact showing a pattern of continual or repetitive neglect, which would put Edith at risk of harm. See, e.g. , In re J.C.B. , 233 N.C. App. 641, 644-45, 757 S.E.2d 487, 489-90 (2014) (reversing in part where the trial court failed to make findings of fact "regarding other factors that would support a conclusion" that the father's abuse of another child supported a conclusion that the juveniles at issue were neglected); In re N.G. , 186 N.C. App. 1, 9, 650 S.E.2d 45, 51 (2007) ("We acknowledge that prior abuse, standing alone, is not sufficient to support an adjudication of neglect.").
We are not persuaded. The statutory definition of neglect specifically provides that "[i]n determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile ... lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home." N.C.G.S. § 7B-101(15). We have held "that the weight to be given that factor is a question for the trial court...." In re A.S. , 190 N.C. App. 679, 690, 661 S.E.2d 313, 320 (2008). " Section 7B-101(15) affords 'the trial court some discretion in determining whether children are at risk for a particular kind of harm given their age and the environment in which they reside.' " N.G. , 186 N.C. App. at 8-9, 650 S.E.2d at 50 (quoting In re McLean , 135 N.C. App. 387, 395, 521 S.E.2d 121, 126 (1999) ). "It is well-established that the trial court need not wait for actual harm to occur to the child if there is a substantial risk of harm to the child in the home." In re D.B.J. , 197 N.C. App. 752, 755, 678 S.E.2d 778, 780-81 (2009) (citing In re T.S., III & S.M. , 178 N.C. App. 110, 113, 631 S.E.2d 19, 22 (2006) ).
Respondent-father is correct in his assertion that "the fact of prior abuse, standing alone, is not sufficient to support an adjudication of neglect." N.G. , 186 N.C. App. at 9, 650 S.E.2d at 51. Indeed, "this Court has generally required the presence of other factors to suggest that the neglect or abuse will be repeated." J.C.B. , 233 N.C. App. at 644, 757 S.E.2d at 489 (citations omitted). However, the instant case is not one where the adjudication of neglect was based solely on the abuse of a sibling. We have previously affirmed adjudications of neglect where another child in the home was abused and the parents failed to take responsibility for that child's injuries. See, e.g. , A.S. , 190 N.C. App. at 690-91, 661 S.E.2d at 320-21 (affirming an adjudication of neglect of a child where the mother intentionally burned another child's foot and falsely claimed the burning was accidental); N.G. , 186 N.C. App. at 8-10, 650 S.E.2d at 50-51 (affirming adjudication of neglect where the respondents' parental rights to another child were terminated and parent failed to acknowledge culpability for that child's injuries).
Here, the trial court's adjudication of neglect was based not only on the fact that Andrew sustained serious injuries, but also on the fact that the parents failed to take responsibility for his injuries. Andrew's treating physician-a member of the hospital's child abuse team-was of the opinion that his injuries were non-accidental and not caused by Edith. Respondent-father, however, first blamed them on Edith, then confessed to shaking Andrew, and later recanted. Under the terms of DSS's initial safety plan, respondent-father was not to have contact with either child. While the mother initially took out a DVPO against respondent-father, she voluntarily dismissed it a few months later and allowed respondent-father to return to the home after his pretrial release.
The trial court's findings of fact show that it took into consideration Andrew's serious, non-accidental injuries, respondent-father's failure to take responsibility for them, and the mother's willingness to turn a blind eye toward his culpability. Additionally, the findings of fact show that there were incidents of domestic violence in the home and that the parents allowed a registered sex offender to babysit for both Andrew and Edith. While these factors are not necessarily related to Andrew's injuries, these two findings may contribute to the injurious environment created by the parents. Based on the foregoing, we conclude that the trial court's findings of fact were sufficient to support its conclusion that Edith lived in an environment injurious to her welfare. We therefore affirm the order of the trial court.
AFFIRMED.
Report per Rule 30(e).
Judges DAVIS and TYSON concur.

Pseudonyms are used throughout for ease of reading and to protect the identity of the juveniles. N.C. R. App. P. 3.1(b) (2017).

See supra note 1.

Respondent-father does not challenge the trial court's conclusions that Andrew was an abused and neglected juvenile. Consequently, the trial court's adjudication as to Andrew is binding on appeal.

Respondent-father also challenges Finding of Fact No. 43, which we disregard, as it is unnecessary to sustain the trial court's adjudication of neglect. See In re T.M., 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006) ("[W]e agree that some of [the challenged findings] are not supported by evidence in the record. When, however, ample other findings of fact support an adjudication of neglect, erroneous findings unnecessary to the determination do not constitute reversible error." (citation omitted)).