BRYANT, Judge.
Where the evidence and the trial court's findings of fact support a determination that the juvenile was at a substantial risk of physical, mental, or emotional impairment due to respondent's actions, the trial court did not err in adjudicating the minor child a neglected juvenile, and we affirm. Where the trial court's dispositional order complied with N.C. Gen. Stat. § 7B-905.1 by providing a "framework" for visitation which included both the minimum frequency of visitation and the length of each visit, we affirm.
On 2 December 2016, the Ashe County Department of Social Services ("DSS") filed a petition alleging that J.A.C. ("Jill")[1] was a neglected juvenile in that she lived in an environment injurious to her welfare. DSS stated that it had been providing services to respondent, Jill's mother, since 20 October 2016 due to concerns regarding respondent's substance abuse and domestic violence issues.
On 29 November 2016, DSS received reports that respondent was acting delusional, possibly using drugs, and threatening to harm herself. The next day, respondent met with a social worker and agreed that Jill could remain with her father until 6 December 2016, at which point respondent would meet with DSS to discuss safety plans. However, on 2 December 2016, respondent went to the paternal grandmother's home where Jill was spending the night, threatened to remove Jill, and made threats against Jill's father and the paternal grandmother. Accordingly, DSS filed a petition to prevent respondent from taking Jill and fleeing and to ensure the juvenile's safety. A non-secure custody order was entered and Jill was placed with her father. On 10 March 2017, the trial court adjudicated Jill neglected. Respondent appeals.
_________________________
On appeal, respondent argues that (I) the evidence and findings did not support a conclusion of neglect and (II) the minimal amount of visitation given to respondent was inconsistent with the evidence and a plan of reunification and was not in Jill's best interests.
I
Respondent first argues that the trial court erred by adjudicating Jill a neglected juvenile. Specifically, respondent argues that because Jill's parents and grandparents took proper care of her, the evidence and findings do not support a conclusion of neglect. We disagree.
"The role of this Court in reviewing a trial court's adjudication of neglect ... is to determine '(1) whether the findings of fact are supported by "clear and convincing evidence," and (2) whether the legal conclusions are supported by the findings of fact[.]' " In re T.H.T., 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007) (quoting In re Gleisner, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000) ). "If such evidence exists, the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary."Id.(citation omitted). We review the trial court's conclusions of law de novo on appeal. In re D.M.M., 179 N.C. App. 383, 385, 633 S.E.2d 715, 716 (2006) (citation omitted), abrogated on other grounds by In re T.H.T., 362 N.C. 446, 665 S.E.2d 57 (2008).
"Neglected juvenile" is defined in N.C. Gen. Stat. § 7B-101(15) as:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; ... or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile ... lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.
N.C. Gen. Stat. § 7B-101(15) (2015). Section 7B-101(15)" 'affords the trial judge some discretion in determining ...' whether children are at risk for a particular kind of harm given their age and the environment in which they reside." In re McLean, 135 N.C. App. 387, 395, 521 S.E.2d 121, 126 (1999) (citation omitted). However, to sustain an adjudication of neglect, this Court has stated that the alleged conditions must cause the juvenile some physical, mental, or emotional impairment, or create a substantial risk of such impairment. See In re Safriet, 112 N.C. App. 747, 752-53, 436 S.E.2d 898, 901-02 (1993) (citations omitted).
Here, the trial court made the following findings of fact in support of its conclusion that Jill was a neglected juvenile:
8. [DSS] opened in-home case management after finding the family in need of services on October 20, 2016 due to the mother's substance abuse and domestic violence in the home of her parents. The mother and [Jill] at that time lived in the maternal grandparents' home.
9. The mother admitted to [the DSS social worker] that she used marijuana and "pills." A referral was made for the mother to have a substance abuse/mental health assessment at Daymark Recovery Services. The mother did not attend the assessment appointment.
10. There have been four child protective services reports in the past two years-all due to the mother's substance abuse and/or domestic violence.
11. The mother appears paranoid at times and does not trust [the DSS social worker].
12. On November 29, 2016 [the DSS social worker] received a telephone call from the maternal grandparents. They were concerned the mother was delusional and was threatening to harm herself. The mother believed the toothpaste was poisoned and threw it away. The maternal grandparents are concerned for their daughter and have not visited [Jill] since she came in to the non-secure custody of the Department. They have a strong bond with [Jill] and would like to visit her.
13. On November 30, 2016 the Department entered another safety plan for [Jill] to stay with her father until December 6, 2016.
14. On December 1, 2016 [the DSS social worker] learned the mother had gone to the home of the paternal grandmother ... attempting to pick up [Jill] from her home. When the father entered the home, the paternal grandmother was sitting on the couch and the mother was standing over her, not allowing [her] to get up. The mother was yelling and walking back and forth. She told [the paternal grandmother] if she got off the couch she would cut her head off. She drew back to hit [the paternal grandmother]. The mother was "grunting" at [Jill]. The father came into the home and told [Jill] to go play in the bedroom.
15. Law enforcement was called to the home.
16. When the father left the home with his girlfriend's child in his car, ... the mother followed him. She was running up behind him. She would pass the father's car, pull off on the side of the road and [wave] her arms....
17. According to the father, paranoia is a constant thing in the mother's life and behaviors. She uses Xanax but does not have a prescription for it to the father's knowledge. During their relationship the mother began counseling but would not complete it. He admitted to hitting the mother in the past but not when [Jill] was present. He has no criminal convictions.
18. On December 2, 2016 the mother was involuntarily committed and placed at Catawba Valley Hospital on December 6, 2016.
19. The Court finds the minor child is a neglected child pursuant to North Carolina General Statute 7B-101(15) in that the child lives in an environment injurious to her welfare.
We are bound by those findings not challenged by respondent on appeal. See Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (citations omitted) (noting that unchallenged findings are deemed supported by competent evidence and are binding on appeal). Moreover, we review only those findings necessary to support the trial court's conclusion that the juvenile was neglected. See In re T.M., 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006) (noting that erroneous findings that are unnecessary to support adjudication of neglect do not constitute reversible error).
Respondent contends that some of the trial court's findings are based on the testimony of an "unsympathetic" father, and respondent attempts to paint her actions as being more innocuous and less harmful than as portrayed by the facts found by the court. However, it is the trial "judge's duty to weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom." In re Whisnant, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984) (citation omitted).
Respondent further argues that the trial court failed to make any finding Jill was impaired or at risk of harm due to the alleged neglect, and claims that she suffered no harm due to any of respondent's neglectful actions. Thus, respondent contends that the trial court's findings of fact were insufficient to sustain an adjudication of neglect. We are not persuaded.
This Court has stated that "[w]here there is no finding that the juvenile has been impaired or is at substantial risk of impairment, there is no error if all the evidence supports such a finding." In re Padgett, 156 N.C. App. 644, 648, 577 S.E.2d 337, 340 (2003) (citation omitted). Here, as demonstrated by the trial court's findings, respondent: (1) admitted to using marijuana and "pills"; (2) failed to attend a scheduled substance abuse assessment; (3) appeared paranoid, delusional, threatened to harm herself, and otherwise acted erratically; (4) threatened to cut off the paternal grandmother's head while in the presence of the juvenile; and (5) was involuntarily committed. We conclude that although the trial court failed to make a specific finding, all the evidence and findings of fact support a determination that Jill was at a substantial risk of physical, mental, or emotional impairment due to respondent's actions. See Matter of G.T., --- N.C. App. ----, ----, 791 S.E.2d 274, 277 (2016) (concluding that juvenile's exposure to controlled substances, and respondent-mother's erratic behavior, evidence of involuntary commitment, and disregard for a domestic violence restraining order exposed him to a substantial risk of impairment); T.M., 180 N.C. App. at 547, 638 S.E.2d at 241 (exposure to domestic violence rendered juvenile a neglected juvenile). Accordingly, we affirm the trial court's order adjudicating Jill a neglected juvenile.
II
Respondent next argues that the trial court's decision to limit visitation to twice a month was arbitrary and constituted an abuse of discretion. We disagree.
Pursuant to N.C. Gen. Stat. § 7B-905.1,
(a) An order that removes custody of a juvenile from a parent, guardian, or custodian or that continues the juvenile's placement outside the home shall provide for appropriate visitation as may be in the best interests of the juvenile consistent with the juvenile's health and safety....
(b) If the juvenile is placed or continued in the custody or placement responsibility of a county department of social services, the court may order the director to arrange, facilitate, and supervise a visitation plan expressly approved or ordered by the court. The plan shall indicate the minimum frequency and length of visits and whether the visits shall be supervised....
N.C. Gen. Stat. § 7B-905.1(a) - (b) (2015).
"This Court reviews the trial court's dispositional orders of visitation for an abuse of discretion." In re C.M., 183 N.C. App. 207, 215, 644 S.E.2d 588, 595 (2007) (citations omitted). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985) (citation omitted).
Here, the trial court ordered that respondent "shall have supervised visitation at a minimum of twice monthly for two hour visits. The visitation shall be approved by the Department or an individual approved by the Department." The trial court's dispositional order complied with N.C. Gen. Stat. § 7B-905.1 by providing a "framework" for visitation which included both the minimum frequency of visitation and the length of each visit. In re N.B., 240 N.C. App. 353, 364, 771 S.E.2d 562, 570 (2015). Furthermore, considering the issues which led to the adjudication of neglect, we decline to hold that the trial court's provision of a minimum of only two days of visitation, while also providing for no upper limit on the frequency of visitation, was manifestly unsupported by reason. Consequently, we conclude the trial court did not abuse its discretion.
AFFIRMED.
Report per Rule 30(e).
Judges STROUD and ZACHARY concur.

A pseudonym is used to protect the identity of the juvenile and for ease of reading. See N.C.R. App. P. 3.1(b) (2017).